**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| HELICOS BIOSCIENCES CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 10-735-SLR-MPT |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| PACIFIC BIOSCIENCES OF CALIFORNIA, | ) | |
| INC., LIFE TECHNOLOGIES | ) | |
| CORPORATION, and ILLUMINA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT PACIFIC BIOSCIENCES OF CALIFORNIA, INC.'S OPENING BRIEF
IN SUPPORT OF ITS MOTION TO STAY PENDING REEXAMINATION**

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19899
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Pacific Biosciences of California, Inc.*

OF COUNSEL:

Edward R. Reines
Paul T. Ehrlich
Derek C. Walter
Sean O'Rourke
WEIL, GOTSCHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Tel:  (650) 802-3000

Dated:  April 25, 2011
1010491 / 36033

## TABLE OF CONTENTS

**Page**

I.     NATURE AND STAGE OF PROCEEDINGS .................................................. 1

II.    SUMMARY OF ARGUMENT ...................................................................... 2

III.   STATEMENT OF FACTS ............................................................................ 4

     A.    The United States Patent Office Has Rejected All Claims of U.S. Patent Nos. 7,645,596 and 7,037,687 ............................................................... 4

     B.    The United States Patent Office Has Rejected All Claims of U.S. Patent No. 7,169,560 ........................................................................................... 5

     C.    The United States Patent Office Has Rejected All Claims of U.S. Patent No. 7,767,400 ........................................................................................... 6

IV.   ARGUMENT .................................................................................................. 7

     A.    A Stay is Appropriate Because This Case Is In Its Infancy .................... 7

     B.    A Stay Would Simplify Issues, Avoid Inconsistent Rulings, and Conserve Judicial and Party Resources ................................................ 9

     C.    Helicos Will Not Be Unduly Prejudiced by A Stay .............................. 13

          1.    PacBio Promptly Pursued Both Reexamination and The Instant Stay Motion ............................................................................... 13

          2.    The Status of the Reexamination Proceedings ........................ 14

          3.    Helicos Has Acknowledged That It No Longer Competes with PacBio ..................................................................................... 15

          4.    The Remaining Term of the Patents-in-Suit ............................ 17

V.    CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alloc, Inc. v. Unilin Decor N.V.*,
   C.A. No. 03-253-GMS, 2003 U.S. Dist. LEXIS 11917 (D. Del. July 11, 2003)........................ 7

*Enhanced Sec. Research*, LLC. V. Cisco Systems, Inc.,
   C.A. No. 09-571-JJF, 2010 U.S. Dist. LEXIS 63789 (D. Del. June 25, 2010) .......... 7, 8, 13, 18

*Ethicon, Inc. v. Quigg*,
   849 F.2d 1422 (Fed. Cir. 1988) ........................................................................................ 7

*Gould v. Control Laser Corp.*,
   705 F.2d 1340 (Fed. Cir.), cert. denied, 464 U.S. 935 (1983) ................................................ 7, 9

*In re Cygnus Telecommunications Tech., LLC*,
   385 F. Supp. 2d 1022 (N.D. Cal. 2005) ................................................................................ 11

*Methode Elecs., Inc. v. Infineon Techs. Corps.*,
   No. C 99-21142 JW, 2000 U.S. Dist. LEXIS 20689 (N.D. Cal. Aug. 7, 2000) ...................... 12

*Patlex Corp. v. Mossinghoff*,
   758 F.2d 594 (Fed. Cir. 1985) .......................................................................................... 9

*Pegasus Development Corp. v. Directv, Inc.*,
   C.A. No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003)............................. 8, 11

*Rohm & Haas Co. v. Brotech Corp.*,
   C.A. No. 90-109-SLR, 1992 U.S. Dist. LEXIS 3252 (D. Del. Mar. 11, 1992)........................ 8

*Sony Computer Entm't Am. Inc. v. Dudas*,
   Civ. No. 1:05cv1447, 2006 U.S. Dist. LEXIS 36856 (E.D. Va. May 22, 2006)....................... 9

*Vehicle IP, LLC v. Wal-Mart Stores, Inc.*,
   C.A. No. 10-503-SLR, 2010 U.S. Dist. LEXIS 123493  (D. Del. Nov. 22, 2010).................... 8

*Wall Corp. v. Bonddesk Group, L.L.C.*,
   C.A. No. 07-844-GMS, 2009 U.S. Dist. LEXIS 20619 (D. Del. Feb. 24, 2009) .................... 13

**Statutes**

35 U.S.C. § 102(b) ............................................................................................................. 5

## I.      NATURE AND STAGE OF PROCEEDINGS

On August 27, 2010, Helicos Biosciences Corporation ("Helicos") brought this patent action alleging that PacBio infringes two patents owned by Arizona State University and two additional patents allegedly owned by Helicos.  *See* D.I. 1 [Complaint]; Exh. 1 [Helicos' Response to Defendants' First Set of Common Interrogatories] at 14.[1]  On October 22, 2010, Helicos amended its complaint to add Life Technologies Corporation ("Life") and Illumina, Inc. ("Illumina") as additional defendants.  In its amended Complaint, Helicos asserted a fifth patent solely against Illumina.  *See* D.I. 9 [Amended Complaint].   On November 8, 2010, PacBio answered Helicos' amended complaint, denying the material allegations and asserting defenses, including invalidity and unenforceability based on inequitable conduct.  D.I. 14 [Answer and Counterclaims].

This case is in its infancy.  The parties have exchanged initial disclosures under Rule 26, have exchanged initial written discovery, and have just completed the service of their responses. In particular, Helicos recently requested a two week extension for its responses to PacBio's first set of requests for production.  Not a single document has been produced, nor has a single deposition been taken.  Under the Court's February 21, 2011 scheduling order, the fact discovery cutoff is January 13, 2012, the expert discovery deadline is April 9, 2012 and trial is to begin on September 10, 2012.  D.I. 39 [Scheduling Order].

On January 27, 2011, PacBio submitted requests for *inter partes* reexamination of all four patents that Helicos asserted against PacBio.  *See* Exh. 2 ['596 patent request]; Exh. 3 ['687 patent request]; Exh. 4 ['560 patent request]; Exh. 5 ['400 patent request].  The PTO has already

---

[1]      Although Helicos alleges that it is the exclusive licensee and hence "effectively the patentee" of the two patents owned by Arizona State University, it has produced no documentation regarding the scope of its alleged exclusive licensee status.  *See* Exh. 1 [Helicos' Response to Defendants' First Set of Common Interrogatories] at 14.   Issues remain as to whether Helicos has standing to assert these two patents.

issued an initial office action rejecting *every single claim* (whether asserted or not) of all four patents.  *See* Exh. 6 ['596 office action]; Exh. 7 ['687 office action]; Exh. 8 ['560 office action]; Exh. 9 ['400 office action].  Across all four patents, the U.S. Patent Office identified at least 28 substantial new questions of patentability.

## II.   SUMMARY OF ARGUMENT

Given the very early stages of this case, the resounding and prompt acknowledgement by the Patent Office of the dubious validity of the patents-in-suit, and the potentially dispositive outcome of the Patent Office's determination with respect to two defendants, most issues, and virtually all patents, the particular circumstances of this case warrant the entry of a stay.

Because this case is in such an early stage, the Court and the parties have not yet expended even a fraction of the time and effort that will ultimately be required to tackle the dense biochemistry and dozens of claims asserted against multiple defendants.  Principles of economy counsel in favor of a stay under these circumstances.  As to whether a stay would simplify the issues in this case, a stay will allow the Patent Office—which has already rejected *every single* claim of every patent asserted against PacBio—to evaluate the claims in view of the prior art and supporting explanations provided in PacBio's reexamination request.  The resulting record undoubtedly will include arguments from Helicos concerning the scope of its patent claims and why it believes its claimed invention is different from the prior art.  And, because the reexamination comes so early in this case, a stay also serves to avoid a potentially-wasteful expenditure of time and resources in litigating and adjudicating claims that could be drastically changed—or eliminated altogether—by the reexamination proceedings.  The benefits of a stay are particularly significant here given the complexity of this case, which involves three different defendants, each of which stands accused of infringing a different subset of Helicos patents through a different accused product.  Along these lines, although one of the five patents asserted

in this case is not undergoing reexamination, it is asserted against only one party, Illumina. While the four patents subject to reexamination pertain to a range of different biochemical approaches to nucleic acid sequencing, the one remaining patent not in reexamination pertains to certain aspects of instrument hardware involved in analyzing biological samples, including the vacuums, lighting systems, optics, and cameras.  *See generally* Exh. 10 ['109 patent].  Resolution of the issues around this patent will require an additional path of factual determination, relating to different technologies and likely employing completely different experts.   Accordingly, streamlining this case to a single patent against a single party involving an instrument patent will promote judicial economy.

Furthermore, a stay here makes particular sense given the uncertain standing of Helicos to assert two Arizona State University patents it allegedly has an exclusive license to.  Indeed, in describing its alleged exclusive license in its March 31, 2011 10-K statement, Helicos stated that if it "fail[s] to use commercially-reasonable efforts to develop, manufacture and sell licensed products, the AZTE License Agreement converts from exclusive to non-exclusive."  Exh. 11 [Helicos Biosciences Corp. March 31, 2011 Form 10-K] at 20.  Yet, in the exact same document, Helicos unambiguously confirmed that "[a]s of the date of this filing, we do not foresee commencing any efforts to sell new instruments."  *Id.* at 17.  Where, as here, a party has essentially acknowledged that it may no longer have the exclusive license necessary to assert two patents-in-suit, it makes little sense to proceed when the Patent Office proceedings may moot this issue.

Finally, a stay would not prejudice Helicos in any respect.  Because, as noted above, Helicos has confirmed in its most recent public SEC filings that it does not foresee selling any additional products, it is not a competitor of Defendants.  Further, Helicos has publicly stated

that it has transitioned into a licensing enterprise for its intellectual property. *See id.* at 4, 18. The stay will thus not prejudice Helicos because it can seek to recover damages and interest during the period of the stay if any of the patent claims were somehow to emerge from the reexamination unamended.

## III.   STATEMENT OF FACTS

### A.   The United States Patent Office Has Rejected All Claims of U.S. Patent Nos. 7,645,596 and 7,037,687

U.S. Patent Nos. 7,645,596 ("the '596 patent") and 7,037,687 ("the '687 patent") both stem from a common provisional application. The alleged "inventive method" of both patents pertains to a procedure for sequencing nucleic acids in which each one of four different nucleotides is "supplied individually and serially to a DNA primer/template system" in a reaction cell (*e.g.*, first A by itself, then G by itself, then T by itself, followed by C by itself). Exh. 12 ['687 patent] at 3:54-59; Exh. 13 ['596 patent] at 3:58-63. If the particular nucleotide that was added to the reaction cell is complementary to the next available spot on the template, it will be incorporated into the template. Exh. 12 ['687 patent] at 4:15-18; Exh. 13 ['596 patent] at 3:58-63, 7:11-14. Otherwise, it will not be incorporated. Regardless, the reaction cell is then washed to remove unincorporated nucleotides. If the nucleotide that was added to the reaction cell happened to be complementary to the next available spot on the template (such that it was incorporated into the template), the washing step will not remove it from the template and its presence may be detected by a variety of means, for example by using a fluorescent label. These adding, washing, and detecting steps are repeated until the entire nucleic acid sequence is known. *See* Exh. 12 ['687 patent] at 6:3-7; Exh. 13 ['596 patent] at 7:14-17. PacBio's SMRT[TM] system, by contrast, includes no adding, washing, and detecting steps. Rather than adding different nucleotides "individually and serially," PacBio's system exposes a growing DNA fragment

simultaneously to all four different nucleotide types, and then detects and identifies each nucleotide type as it is incorporated in real time using methods that are distinct from and far more sophisticated than anything suggested in the '596 and '687 patents.

Regardless, DNA sequencing by the sequential and serial addition of individual nucleotides as disclosed in the '596 and '687 patents was well known and described in the art prior to the time of filing, as reflected in the references identified in PacBio's reexamination request. Indeed, the United States Patent Office has already rejected *every single* claim of the '596 and '687 patents in view of this art. In the process, the patent office adopted seven different bases to reject the claims of the '596 patent. *See* Exh. 6 ['596 office action] at 8. Likewise, with respect to the '687 patent, the USPTO adopted twelve different rejections proposed by PacBio. *See* Exh. 7 ['687 office action] at 4-17. In addition to rejections grounded in obviousness, at least one of the grounds for rejecting each claim of the '687 patent was based on 35 U.S.C. § 102(b). For the '596 patent all but one claim was rejected based on 35 U.S.C. § 102(b), including at least one § 102(b) rejection for each asserted claim.

### B.   The United States Patent Office Has Rejected All Claims of U.S. Patent No. 7,169,560

The alleged invention of U.S. Patent No. 7,169,560 ("the '560 patent") pertains to a "short cycle" sequencing method in which reaction conditions are controlled so that "it is statistically unlikely that more than 1 or 2 nucleotides are added to a growing primer stand in any given incorporation cycle." Exh. 14 ['560 patent] at 2:56-3:3. According to the applicants, prior art sequencing methods were unable to resolve the precise number of nucleotides incorporated where a single nucleotide is repeated consecutively three or more times. *Id.* at 2:6-18. To allow for a more accurate detection, the claimed method allegedly controls reaction conditions so that on average, only one nucleotide is added to the fragment during each cycle of adding, washing,

and detection.  *See, e.g., id.* at Claim 1.  This is completely inapplicable to and makes no sense in the context of PacBio's SMRT[TM] system because there are no such cycles.  As noted above, *see supra* Part III.A, PacBio's system immediately detects and identifies the incorporation of individual nucleotides in real time, irrespective of the time of exposure to the nucleotides or whether the surrounding sequence is repetitive.  The alleged problem addressed by the '560 patent simply does not apply to PacBio's SMRT[TM] system.

In any event, "short cycle" sequencing methods already were known in the art, as demonstrated by the three references identified in PacBio's reexamination request.  Indeed, in rejecting ***all twelve claims*** of the '560 patent, the USPTO determined that PacBio's reexamination request raised four different SNQs, and that each claim was impacted by multiple SNQs.  *See* Exh. 8 ['560 office action] at 4-13.

## C.   The United States Patent Office Has Rejected All Claims of U.S. Patent No. 7,767,400

U.S. Patent No. 7,767,400 ("the '400 patent") is directed to "paired-end reads" wherein a "sequencing-by-synthesis" reaction is carried out to obtain first and second reads of a DNA template.  A "spacer of a defined length" separates the first and second reads of the DNA template.  Exh. 15 ['400 patent] at 2:44-53.  PacBio's SMRT[TM] technology does not infringe for multiple reasons.  For example, the claims of the '400 Patent do not carry out the "sequencing-by-synthesis" methods required in the '400 patent.  Likewise, PacBio's accused technology does not involve synthesizing "a spacer of a defined length," in the manner required by the claims, nor does it use the claimed "detectably labeled nucleotides" contemplated by the patent.

Regardless, the method disclosed in the '400 patent of using spacers to perform paired-end reads was well known in the art prior to the time of filing, as demonstrated by the eight references identified in PacBio's reexamination request.  Indeed, the Patent Office determined

that PacBio's reexamination request raised eight SNQs, and all but two dependent claims were impacted by multiple SNQs.  Thus, the Patent Office rejected **all 32 claims** of the '400 Patent in view of the prior art.  *See* Exh. 9 ['400 office action] at 26.

## IV.    ARGUMENT

A district court has the inherent power to control and manage its docket.  *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir.), cert. denied, 464 U.S. 935 (1983).  This power includes the authority to stay patent litigation pending the outcome of reexamination proceedings in the Patent Office.  *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988); *Gould*, 705 F.2d at 1342.  Determining whether to grant such a stay is a matter soundly within the discretion of this district court.  *Enhanced Sec. Research*, *LLC. V. Cisco Systems, Inc.*, C.A. No. 09-571-JJF, 2010 U.S. Dist. LEXIS 63789, at *10 (D. Del. June 25, 2010).  In considering whether to grant a stay, courts consider three factors: (1) whether discovery is complete and a trial date set; (2) whether a stay will simplify the issues for trial; and (3) whether the grant of a stay would cause the non-moving party to suffer undue prejudice from any delay or allow the moving party to gain a clear tactical advantage over the non-moving party.  *Id*.  As explained below, each of these factors favors a stay of this case.

### A.      A Stay is Appropriate Because This Case Is In Its Infancy

Staying a case until the conclusion of reexamination proceedings can be an efficient and effective case management technique.  *See, e.g.*, *Alloc, Inc. v. Unilin Decor N.V.*, C.A. No. 03-253-GMS, 2003 U.S. Dist. LEXIS 11917, at *7 (D. Del. July 11, 2003) ("[I]t is beyond dispute that the court would benefit from a narrowing of the numerous complex issues relating to claims, which, if clearly defined, would streamline discovery and subsequent litigation.  To this end, the reexamination of the '621 patent will greatly serve the purpose of defining the issues in this case.").  Accordingly, stays of litigation pending reexamination frequently are granted when the

request for a stay is made early in the litigation.   *See, e.g.*, *Pegasus Development Corp. v. Directv, Inc.,* Civ. No. 00-1020-GMS, 2003 WL 21105073, at *2 (D. Del. May 14, 2003) (staying case after discovery had begun but before it was complete); *Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, C.A. No. 10-503-SLR, 2010 U.S. Dist. LEXIS 123493  (D. Del. Nov. 22, 2010) (granting a stay early in litigation among non-competitors); *Enhanced Sec. Research*, 2010 U.S. Dist. LEXIS 63789 (granting a stay in similar conditions, noting the patent still had six years left in its term).

Because this stay motion was brought promptly and early in this case, it is an ideal candidate for a stay.  Indeed, the Court and parties have thus far invested relatively little in this case.  Although the parties have recently exchanged initial discovery requests and responses, written discovery is in its initial stages.  In fact, Helicos just prepared basic form responses to PacBio's first set of document requests, having recently requested a two week extension to carry out this task.  Likewise, no depositions have been noticed or conducted, and no substantive motions have been filed.  Fact discovery is not scheduled to be completed until January 2012, and the expert discovery deadline is roughly a year away.  *See Rohm & Haas Co. v. Brotech Corp.*, C.A. No. 90-109-SLR, 1992 U.S. Dist. LEXIS 3252, 8-9 (D. Del. Mar. 11, 1992) (where the action had been pending for over a year, nonetheless concluding that proceedings had not advanced too far to preclude a stay because trial was scheduled to commence in more than seven months, no pretrial order was in place, and no dispositive motions had been decided).  At the same time, all four parties in the case are about to enter an unusually time-consuming and costly stage of discovery, in which they will collect and review thousands upon thousands of electronic documents.  Staying the case now—before four different parties all invest significant resources

in this expensive process—will avoid these costs, maximize efficiency, promote judicial economy, and conserve resources.

### B.   A Stay Would Simplify Issues, Avoid Inconsistent Rulings, and Conserve Judicial and Party Resources

The Federal Circuit has explained that "[o]ne purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould*, 705 F.2d at 1342; *see also Sony Computer Entm't Am. Inc. v. Dudas*, Civ. No. 1:05cv1447, 2006 U.S. Dist. LEXIS 36856, at *10-*11 (E.D. Va. May 22, 2006) ("Congress hoped to encourage third parties to resolve patent validity issues extrajudicially . . . by providing a viable, economically attractive alternative to litigation").  In other words, reexamination will necessarily impact the patent claims at issue, either by eliminating them altogether, by altering their scope, or by confirming that they are in fact patentable over the prior art considered during the reexam.  Congress specifically contemplated the benefits of reexamination as a cheaper alternative to full-blown litigation:

> The bill's proponents foresaw three principal benefits.  First, the new procedure could settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases.  Second, the procedure would allow courts to refer patent validity questions to the expertise of the Patent Office.  [Citing Senate hearings], wherein Senator Bayh said that reexamination would be "an aid" to the trial court "in making an informed decision on the patent's validity."  Third, reexamination would reinforce "investor confidence in the certainty of patent rights" by affording the PTO a broader opportunity to review "doubtful patents."  126 Cong. Rec. 29,895 (1980) (statement of Rep. Kastenmeier).

*Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed. Cir. 1985).  Indeed, in passing the legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion:

> It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent costly pre-trial maneuvering which attempts to circumvent the reexamination procedure.  It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner.

Exh. 16 [H.R. Rep. No. 96-1307, pt. I, at 3-4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460, 6463].

The potential benefits are confirmed by the real-world implications of reexamination proceedings before the Patent Office.  In practice, the claims of a patent are highly likely to be canceled, amended, or narrowed during *inter partes* reexamination—on average, 89% of reexaminations initiated by a third party result in at least some cancelled or amended claims. Exh. 17 [United States Patent and Trademark Office, *Inter Partes* Reexamination Filing Data, Sept. 30, 2010].  If the asserted patent claims are cancelled, this litigation will be over.  If the claims are narrowed or amended, Helicos' infringement allegations may also be narrowed or eliminated outright.

In any event, even if the patent claims were to survive reexamination in their current form, this case would still be streamlined by a stay.  The reexamination proceedings will provide a record of the Patent Office's examination of Helicos' patent claims in light of both the prior art and Helicos' responses.  This record may serve to focus the parties' disputes on key issues and, as a result, may streamline litigation on those issues if the litigation resumes—or in this case, commences in earnest—after reexamination.  This process has led this Court to recognize that other downstream benefits of a stay pending reexamination are that "(1) many discovery problems relating to the prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial, reducing the complexity and length of the litigation; (3) the issues, defenses, and evidence will be more easily limited in pre-trial conferences following a

reexamination; (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court; and (5) if the patent is declared invalid, the suit likely will be dismissed as to that patent." *Pegasus*, 2003 WL 21105073, at \*2. Many of these benefits are likely in this case given its procedural posture.

As noted above, absent a stay, the parties and Court will soon undertake significant effort on discovery and, as discovery progresses, claim construction and other pretrial proceedings. Not only would substantial efforts be required for litigation of patent claims that may be cancelled or amended, but the proceedings will be conducted without the benefit of evidence that will be developed in the reexamination record and may shed light on the issues to be adjudicated. *See, e.g.*, *In re Cygnus Telecommunications Tech., LLC,* 385 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005) ("For those claims that survive the reexamination, this court may have a richer prosecution history upon which to base necessary claim construction determinations or reconsideration."). By staying this case now, before the Court and the parties invest time and money on discovery and claim construction, the Court can help ensure that this litigation is conducted with efficiency and a minimum of burden on its participants.

Such considerations related to simplification are particularly relevant here, where an already intricate patent case is made all the more complicated by the presence of three different defendants, each of which stands accused of infringing a different subset of Helicos patents by a different product line. Although one patent at issue in this case is not subject to reexamination, it is also not asserted against both PacBio and Life. Specifically, U.S. Patent No. 7,593,109 ("the '109 patent") is asserted only against Illumina. The '109 patent pertains to detailed aspects of instrumentation for analyzing biological samples, including reaction cell volumes, vacuum pressures, laser wavelengths, and optical systems, and is not directly related to the other patents-

in-suit.  *See, e.g.*, Exh. 10 ['109 patent] at Figs. 1-12B.  Having a sole inventor different from the inventors of any of the other patents-in-suit, the '109 patent is an outlier relative to the four other patents-in-suit, which are subject to reexamination and pertain to an assortment of biochemical techniques for sequencing nucleic acids.  Considering just the range of subject matter covered by the four patents subject to reexamination, this case is complex enough.  Yet, the reexamination will likely narrow and focus the scope of this subject matter significantly with respect to all parties, and perhaps even eliminate it entirely with respect to both Life and PacBio.  The most sensible approach is to thus wait for the conclusion of reexamination, at which point the Court may be able to proceed with a case involving only the '109 patent against only a single defendant.  Alternatively, it is within the sound discretion of this Court to stay the portion of this case involving the four patents subject to reexamination.  *See, e.g.*, *Methode Elecs., Inc. v. Infineon Techs. Corps.*, No. C 99-21142 JW, 2000 U.S. Dist. LEXIS 20689 (N.D. Cal. Aug. 7, 2000) (with five patents-in-suit, granting the motion to stay with respect to one patent in reexam and a second patent related to the one in reexam to avoid duplicative discovery, tutorials, and claim construction hearings).

An additional consideration that makes this case uniquely suited to a stay is the fact that Helicos may soon—if not already—lack standing to assert the '596 and '687 patents, which Helicos allegedly acquired an exclusive license to from Arizona State University and are Helicos' two core sequencing patents.  As Helicos confirmed to its shareholders in its recent 10-K statement, it is "obligated to use reasonable commercial efforts to develop, manufacture and commercialize licensed products.  In addition, if [Helicos] fail[s] to use commercially-reasonable efforts to develop, manufacture and sell licensed products, the [Arizona Technology Enterprises] License Agreement converts from exclusive to non-exclusive."  Exh. 11 [Helicos Biosciences

Corp. March 31, 2011 Form 10-K] at 20.  Critically, in the same public disclosure, Helicos also confirmed that it is no longer fulfilling these obligations, unambiguously stating that "[a]s of the date of this filing, [i]t do[es] not foresee commencing any efforts to sell new instruments."  *Id.* at 17.  Thus, Helicos' own public admissions appear to suggest that it is no longer an exclusive licensee and thus no longer "effectively the patentee" of the '596 and '687 patents.

   **C.   Helicos Will Not Be Unduly Prejudiced by A Stay**

   Because of efficiency gains described above and associated with the very early stages of this case, a stay would be to the benefit of all parties and the process, and would not be unduly prejudicial to Helicos or unduly beneficial to Defendants.  Indeed, the only ostensible prejudice to Helicos, given the current procedural posture of the case and that resources have not yet been devoted to discovery, is delay in adjudication of the claims in this case (assuming they survive reexamination) during the pendency of the stay.  But the delay caused by a reexamination proceeding "does not, by itself, amount to undue prejudice."  *Wall Corp. v. Bonddesk Group, L.L.C.*, C.A. No. 07-844-GMS, 2009 U.S. Dist. LEXIS 20619, (D. Del. Feb. 24, 2009), at *4. Rather, in evaluating the potential for prejudice, this Court considers a number of factors, including (1) the timing of the request for reexamination, (2) the timing of the request for a stay, (3) the status of the reexamination proceedings, (4) whether the parties are direct competitors, and (5) the remaining term of the asserted patents.  *Vehicle IP, LLC,* 2010 U.S. Dist. LEXIS 123493, at *5-7; *Enhanced Sec. Research,* 2010 U.S. Dist. LEXIS 63789, at *12.  Independently and taken together, these and other relevant considerations confirm that Helicos will not be unduly prejudiced by a stay.

   **1.   PacBio Promptly Pursued Both Reexamination and The Instant Stay
            Motion**

   As noted above, the reexamination requests for all four patents asserted by Helicos

against PacBio were filed on January 27, 2011, roughly three months after Helicos filed its amended Complaint.  This modest time gap shows that PacBio acted promptly after the opening steps of this litigation to (1) retain reexamination counsel, (2) identify and analyze prior art, (3) have reexamination requests prepared, and (4) file the requests with the U.S. Patent Office. Similarly, the instant motion was filed as soon as reasonable and practicable—just days after the Patent Office granted the fourth request for reexamination on April 13, 2011.  Having acted diligently and with little delay in both seeking reexamination and a corresponding stay, there can be no doubt that the instant Motion does not reflect an attempt by PacBio to gain an improper tactical advantage by filing for a stay at an opportune time.  Rather, PacBio's diligence and promptness confirms that this motion reflects a genuine attempt to resolve serious validity issues with Helicos' patents in a far less costly and intrusive manner than district court litigation. Accordingly, this consideration weighs in favor of a stay.

### 2.        The Status of the Reexamination Proceedings

The reexamination in this case has in fact proceeded with the "special dispatch" expected of an *inter partes* reexamination.  Indeed, although the U.S. Patent Office is permitted to take up to three months to issue an initial office action in an *inter partes* reexamination, *see* 37 C.F.R. § 1.923, it has done so on a quicker time frame for all four patents asserted against PacBio in this action.  Specifically, for the '596 and '400 patents, the office actions issued roughly six weeks after the requests were filed.  Similarly, for the '560 patent, the office action issued about two months after the requests were filed, while the office action for the '687 patent issued shortly thereafter.  Thus, the available data points confirm that the Patent Office is paying close attention to PacBio's reexamination requests and will address them diligently.

More importantly, every available data point thus far resoundingly confirms the seriousness of the invalidity concerns with Helicos' patents.  Indeed,  as explained above, *see*

*supra* Part III, ***every single claim*** of all four patents asserted against PacBio has been rejected by the Patent Office.  The Patent Office identified at least thirteen substantial new questions of patentability and relied upon at least twelve grounds in rejecting all five claims of the '687 patent, finding that the various claims of the '687 patent were anticipated by at least three separate references and rendered obvious by at least nine separate combinations of prior art.  The Patent Office identified at least three substantial new questions of patentability and relied upon at least seven grounds in rejecting all eight claims of the '596 patent, finding that the various claims of the '596 were anticipated by at least three separate references and rendered obvious by at least four separate combinations of prior art.  The Patent Office identified at least four substantial new questions of patentability and relied upon at least four separate grounds in rejecting all twelve claims of the '560 patent, finding that the various claims of the '560 patent were anticipated by at least two separate references and rendered obvious by at least two combinations of prior art. Finally, the Patent Office identified at least eight substantial new questions of patentability and relied upon at least fifteen grounds in rejecting all thirty two claims of the '400 patent, finding that the various claims of the '400 patent were anticipated by at least two separate references and rendered obvious by at least thirteen separate combinations of prior art.  It is difficult to imagine a more thorough and comprehensive pronouncement as to the invalidity of the four patents subject to reexamination.

### 3.      Helicos Has Acknowledged That It No Longer Competes with PacBio

Although Helicos may have at one point been considered a competitor of PacBio, this is no longer the case.  By its own admission, Helicos does "not foresee commencing any efforts to sell new instruments."  *See* Exh. 11 [Helicos Biosciences Corp. March 31, 2011 Form 10-K] at 17.  This is significant, because it means that Helicos will not lose sales or market share during the period of the stay as a result of PacBio's continued manufacture and sale of the accused

products.  Rather than actually selling product, Helicos has stated that it has "intensified focus on intellectual property monetization through licensing and enforcement strategies" and that this has become "even more central to [Helicos'] strategy and operations."  *Id.* at 18; *see also id.* at 4 ("Going forward, we plan to deploy our limited resources by focusing on intellectual property monetization and concentrating our research and development efforts in targeted areas designed to achieve tangible proof-of-concept goals . . . .").  Having shifted its remaining business efforts to a licensing model, Helicos can only realistically seek damages in this lawsuit, and would not be entitled to injunctive relief.[2]  Accordingly, any delay that might result from the stay will not be prejudicial, as Helicos can seek to recover damages and interest during the period of the stay on patent claims that are not rejected or amended during reexamination.

Second, the stay should not be unduly long.  In this case, the PTO granted reexamination on the '596, '687, '560, and '400 patents ahead of schedule within less than a few months—an indication of the PTO's willingness to consider these patents on a priority basis.  Because the PTO already has shown its eagerness to reexamine these patents quickly, the reexamination proceedings should not be unduly long.

In addition, Helicos cannot claim prejudice from any delay because Helicos itself delayed for years before it filed this lawsuit.  In its 10-K, Helicos appears to confirm that it allegedly acquired its exclusive license from Arizona State University to the '687 patent, which issued in May 2006, in March 2005.  Exh. 11 [Helicos Biosciences Corp. March 31, 2011 Form 10-K] at

---

[2]    *See eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837 (2006); *IMX, Inc., v. Lendingtree, LLC*, 469 F. Supp. 2d 203, 225-26 (D. Del. 2007) (denying permanent injunction, even though plaintiff won an infringement verdict against defendant, because plaintiff's business model involved licensing its patents and "[p]laintiff's licensing activities also suggest that plaintiff's injury would be compensable in damages").

20.   Likewise, the '560 patent issued in January 2007.[3]  Yet, Helicos delayed until August 2010 before filing this lawsuit.  Helicos did so despite the public availability of the information upon which it relies to support its infringement allegations.  Indeed, in its Complaint, Helicos relies upon an article published in the journal *Science*, one of the most prominent scientific journals.  *See* D.I 1 [Complaint].  Helicos later relied upon this same article to prepare an infringement claim chart in its interrogatory responses.  Yet, rather than bringing suit when this article appeared, Helicos waited close to an additional two years.  Similarly, with regard to Defendant Illumina, Helicos' infringement allegations rely upon a late 2008 article published in the Journal *Nature*—a scientific journal equally as prominent as *Science*.  *See id.*  Again, rather than bring suit against Illumina when this article appeared, Helicos waited.  Having waited so long to assert its patent rights against multiple defendants, Helicos should not be heard to complain that it will be prejudiced if a stay pending reexamination further delays its ability to recover damages.

### 4.      The Remaining Term of the Patents-in-Suit

Finally the remaining length of the patents-in-suit further favors a stay.  As to the four patents asserted against PacBio that are undergoing reexamination, the earliest expiration date is late November 2019 for the '596 patent.  The latest expiration date is February 2028 for the '400 patent.  For the one patent in this case not subject to reexamination and that is asserted against only Illumina, the expiration date is not until 2024.  Thus, none of the patents involved in this case will expire anytime soon, and Helicos will suffer no prejudice vis-à-vis its ability to enforce the exclusivity of the patents-in-suit.  And, in any event, this consideration carries little weight here because, as explained above, Helicos can only realistically hope to obtain damages in this action and not injunctive relief.  *See, e.g.*, *Enhanced Sec. Research*, 2010 U.S. Dist. LEXIS

---

[3]      Although the '400 patent and '596 patents issued in August 2010 and January 2010, respectively, Helicos was nonetheless in position to take action with respect to the '560 and '687 patents years before it did.

63789, at *12 ("Plaintiffs' contention that a stay pending reexamination will prejudice their rights to enforce the exclusivity of the [patents-in-suit] is largely speculative, and in any event, is counterbalanced by the fact that the patents do not expire [for six years].").

## V.  CONCLUSION

For the foregoing reasons, PacBio respectfully requests that this action be stayed pending reexamination of the '596, '687, '400, and '560 patents.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Edward R. Reines
Paul T. Ehrlich
Derek C. Walter
Sean O'Rourke
WEIL, GOTSCHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Tel:  (650) 802-3000

Dated:  April 25, 2011
1010491 / 36033

By:  _/s/ Richard L. Horwitz_____
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19899
    Tel:  (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendant*
*Pacific Biosciences of California, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

<u>**CERTIFICATE OF SERVICE**</u>

I, Richard L. Horwitz, hereby certify that on April 25, 2011, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on April 25, 2011, the attached document was Electronically Mailed

to the following person(s):

Richard D. Kirk
Stephen B. Brauerman
Bayard, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
*Attorneys for Plaintiff*
*Helicos Biosciences Corporation*

Douglas M. Kline
Brian A. Fairchild
Sheryl Koval Garko
Goodwin Procter LLP
53 State Street
Boston, MA  02109
dkline@goodwinprocter.com
bfairchild@goodwinprocter.com
sgarko@goodwinprocter.com
*Attorneys for Plaintiff*
*Helicos Biosciences Corporation*

Steven J. Balick
Lauren E. Maguire
Andrew Colin Mayo
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899
sbalick@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com
*Attorneys for Defendant Illumina, Inc.*

Jeffrey N. Costakos
Rebecca J. Pirozzolo-Mellowes
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI  53202-5306
jcostakos@foley.com
jpirozzolo-mellowes@foley.com
*Attorneys for Defendant Illumina, Inc.*

Karen E. Keller
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
kkeller@ycst.com
*Attorneys for Defendant*
*Life Technologies Corporation*

Polaphat Veravanich
Life Technologies Corporation
5791 Van Allen Way
Carlsbad, CA 92008
paul.veravanich@lifetech.com
*Attorneys for Defendant*
*Life Technologies Corporation*

Kurtis D. MacFerrin
Life Technologies Corporation
850 Lincoln Centre Drive
Foster City, CA 94404
Kurtis.MacFerrin@lifetech.com
*Attorneys for Defendant*
*Life Technologies Corporation*

By:     */s/ Richard L. Horwitz*
        Richard L. Horwitz
        David E. Moore
        POTTER ANDERSON & CORROON LLP
        Tel:  (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

987785/36033