THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HELICOS BIOSCIENCES CORPORATION,

Plaintiff,

v.

PACIFIC BIOSCIENCES OF CALIFORNIA,
INC., LIFE TECHNOLOGIES
CORPORATION, and ILLUMINA, INC.,

Defendants.

C.A. No. 10-735-SLR

**PLAINTIFF HELICOS BIOSCIENCES CORPORATION'S ANSWERING BRIEF IN
OPPOSITION TO DEFENDANT PACIFIC BIOSCIENCES OF CALIFORNIA, INC.'S
MOTION TO STAY PENDING REEXAMINATION**

BAYARD, P.A.
Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com

OF COUNSEL:

Douglas J. Kline
Brian A. Fairchild
Sheryl Koval Garko
GOODWIN PROCTER LLP
53 State Street
Boston, MA  02109
(617) 570-1000

*Attorneys for Plaintiff
Helicos BioSciences Corporation*

Kurt M. Kjelland
GOODWIN PROCTER LLP
4365 Executive Drive
3rd Floor
San Diego, CA  92121
(858) 202-2700

May 12, 2011

## TABLE OF CONTENTS

I.  NATURE AND STAGE OF PROCEEDINGS ...................................................1

II.  SUMMARY OF ARGUMENT .................................................................2

III.  STATEMENT OF FACTS ....................................................................4

    A.  Fact Discovery Is Well Underway.........................................................4

    B.  Defendants Have Not Timely Advanced The Protective Order .............................5

    C.  The Four Reexamination Proceedings Have Only Just Begun..............................6

IV.  ARGUMENT ................................................................................6

    A.  A Stay Will Not Simplify The Issues For Trial Because Defendants Have
        Pleaded Numerous Defenses That Do Not Overlap With The
        Reexamination Issues, The '109 Patent Is Not In Reexamination, And Life
        And Illumina Will Argue That They May Freely Raise Any Issues That
        PacBio Raises In The Reexaminations ....................................................7

        1.  This Case Has Numerous Distinct Issues That Do Not Overlap
            With The Issues Being Evaluated In The Reexaminations........................ 7

        2.  Because Life And Illumina Are Not Parties To The
            Reexaminations, Presumably They Will Argue That They Are Not
            Estopped From Proffering The Same Arguments To This Court
            That PacBio Will Make In The Reexaminations ...................................... 10

        3.  PacBio's Own Caselaw Illustrates That This Court Should Accord
            Little Weight To The Alleged Benefits of a Stay ..................................... 11

        4.  Helicos's Standing Is A Matter For This Court To Resolve And
            Has No Overlap With The Reexamination Proceedings........................... 12

    B.  A Stay Will Unduly Prejudice Helicos Because The Reexaminations Have
        Barely Progressed ......................................................................12

        1.  The Reexaminations Have Barely Progressed, Weighing Against A
            Stay ................................................................................. 13

        2.  Because The Trial Date Is On-Calendar And Will Occur Long
            Before The Reexaminations Conclude, A Stay Will Unduly
            Prejudice Helicos And Allow Defendants To Gain A Clear
            Tactical Advantage ................................................................. 15

i

3. A Lengthy Stay Severely Prejudices Helicos's Right To Exclusivity ............................................................................. 16

4. A Lengthy Stay May Result In Lost Evidence And Lost Witnesses ........ 16

5. Helicos Has Been and Continues To Be A Direct Competitor of Defendants ............................................................................. 17

6. PacBio Likely Filed The Reexamination Requests And Motion To Stay As A Litigation Delay Tactic ............................................. 18

C. A Trial Date Has Been Set And Discovery Is Underway ..................... 19

D. Proceeding With The Litigation Will Not Cause PacBio Hardship Or Inequity ............................................................................. 20

V. CONCLUSION ............................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*APP Pharms., LLC v. Ameridose LLC,*
    No. 10-4109 (JAP), 2011 WL 816622 (D.N.J. Mar. 8, 2011) ..................................8

*BarTex Research, LLC v. FedEx Corp.,*
    611 F. Supp. 2d 647 (E.D. Tex. 2009) ...........................................................13, 18

*Belden Techs. Inc. v. Superior Essex Commc'ns LP,*
    No. 08-63-SLR, 2010 WL 3522327 (D. Del. Sept. 2, 2010) (Robinson, J.) .................. passim

*Cooper Notification, Inc. v. Twitter, Inc.,*
    No. 09-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010) ...................................... passim

*eBay Inc. v. MercExchange, LLC,*
    547 U.S. 388 (2006).......................................................................................18

*Enhanced Sec. Research, LLC v. Cisco Sys., Inc.,*
    No. 09-571-JJF, 2010 WL 2573925 (D. Del. June 25, 2010).........................13, 19

*ESN, LLC v. Cisco Sys., Inc.,*
    No. 5:08-CV-20, 2008 WL 6722763 (E.D. Tex. Nov. 20, 2008).........................16

*Life Techs. Corp. v. Illumina, Inc.,*
    No. 09-709-RK, 2010 WL 2348737 (D. Del. June 7, 2010)...........................3, 4, 10

*Oracle Corp. v. Parallel Networks, LLP,*
    No. 06-414-SLR, 2010 WL 3613851 (D. Del. Sept. 8, 2010) (Robinson, J.) .........................9

*Pegasus Dev. Corp. v. Directv, Inc.,*
    No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003) ...................11, 19

*Rohm & Haas Co. v. Brotech Corp.,*
    No. 90-109-SLR, 1992 U.S. Dist. LEXIS 3252 (D. Del. Mar. 11, 1992).............19

*Roy-G-Biv Corp. v. Fanuc Ltd.,*
    No. 2:07-CV-418 (DF), 2009 WL 1080854 (E.D. Tex. Apr. 14, 2009).........................12, 14

*Stormedia Tex., LLC v. CompUSA, Inc.,*
    No. 2:07-CV-025, 2008 WL 2885814 (E.D. Tex. July 23, 2008) ...................10, 11

*Vehicle IP, LLC v. Wal-Mart Stores, Inc.,*
    No. 10-503-SLR, 2010 WL 4823393, at *2 (D. Del. Nov. 22, 2010) ...............13, 19

**STATUTES**

35 U.S.C. §§ 102 and 103 ...........................................................................................7

35 U.S.C. § 112 ....................................................................................................2, 7

35 U.S.C. § 314(b)(2) ...............................................................................................13

35 U.S.C. § 315(c) ....................................................................................................10

35 U.S.C. § 317(b) ....................................................................................................15

## I.     NATURE AND STAGE OF PROCEEDINGS

This case is not in its infancy, as Defendant Pacific Biosciences of California, Inc. ("PacBio") wrongly contends.  Plaintiff Helicos BioSciences Corporation ("Helicos") filed a complaint for patent infringement against PacBio over eight months ago and an amended complaint adding Defendants Life Technologies Corporation ("Life") and Illumina, Inc. ("Illumina") over six months ago.  Helicos has alleged infringement of five patents in various combinations: (1) PacBio is infringing U.S. Patent Nos. 7,037,687 ("'687 patent"), 7,169,560 ("'560 patent"), 7,645,596 ("'596 patent"), and 7,767,400 ("'400 patent"); (2) Life is infringing the '687, '560, and '596 patents; and Illumina is infringing the '687 and '560 patents and U.S. Patent No. 7,593,109 ("'109 patent").  *See* D.I. 1 (Complaint); D.I. 9 (Amended Complaint).

In February, the Court held a scheduling conference and issued a scheduling order setting all major events on the Court's calendar, including a two-week jury trial scheduled for September 2012.  D.I. 39.  Notably, at no point during the scheduling conference, or at any time thereafter, did PacBio raise its intent to move for a stay.  In March, the parties discussed and agreed upon an alternative dispute resolution process with Magistrate Judge Thynge, and scheduled multiple dates for mediation in August.  D.I. 48 (Order Scheduling Mediation). Written and fact discovery are well underway, and Helicos has produced 740 MB of documents (roughly 74,000 pages).  In addition, once the Protective Order is entered, Helicos expects to be able to produce 30 GB of documents (roughly 3,000,000 pages) within days thereafter.

PacBio has brought *inter partes* reexaminations on the '687, '560, '596, and '400 patents. Under *inter partes* practice, both PacBio and Helicos will have rights of appeal from whatever decision the Patent Office makes.  Each of the four *inter partes* reexamination proceedings have only just begun.  Even by the most conservative estimates, each reexamination proceeding *will*

*extend substantially beyond the September 2012 trial date* in this case. *See* Ex. A[1] (3/31/11 PTO Stats) (average pendency of *inter partes* reexamination is 36.5 months).

Defendants Illumina and Life *have not joined PacBio's Motion to Stay*, and the '109 patent is *not in reexamination*. Nevertheless, PacBio has requested a stay of this entire litigation with respect to all Defendants and all patents, including the '109 patent.

## II.   SUMMARY OF ARGUMENT

PacBio's Motion to Stay should be denied because (1) given the many issues that will be unaffected (including an entire patent) by the reexaminations, reexamination of a subset of the patents-in-suit will not streamline this case, (2) a lengthy, indefinite stay will be unduly prejudicial to Helicos, and (3) a trial date has been set in this case, and under this schedule—to which PacBio assented—this case will be long over before the highly-contested *inter partes* reexaminations conclude.

A stay will not streamline this litigation. The three defendants in this case have raised no fewer than sixteen defenses that will be unaffected by the reexaminations. Indeed, this Court has recently indicated that a stay is disfavored when infringement, validity under Section 112, inequitable conduct, or other issues outside the reach of reexamination remain to be tried. All these issues will remain in the case—as well as a purported standing issue—regardless of the outcome of the reexaminations—a fact that strongly disfavors a stay. And because the '109 patent is not in reexamination, waiting for the pending reexaminations will not promote any judicial economy. Additionally, because Life and Illumina did not request the reexaminations, presumably they will argue that they are not estopped from raising the same prior art arguments that PacBio has made (or will make) in the reexaminations when the litigation resumes.

---

[1] All exhibits refer to those attached to the Declaration of Blake B. Greene in Support of Helicos's Answering Brief in Opposition to PacBio's Motion to Stay Pending Reexamination ("Greene Decl."), filed herewith.

A stay also will cause Helicos to suffer undue prejudice and allow Defendants to gain a clear tactical advantage.  "[R]eexamination is an arduous process fraught with the potential for multiple appeals."  *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, No. 08-63-SLR, 2010 WL 3522327, at *3 (D. Del. Sept. 2, 2010) (Robinson, J.).   That insight is particularly appropriate here where PacBio asks this Court to stay the litigation pending not one but four *inter partes* reexamination proceedings, each of which was only granted by the Patent Office in the last two months.   Under the Patent Office's statistics, a stay will likely last at least 36.5 months, and a recent study indicates that the delay may be *at least 6.5 years*.

Such an excessive delay contrasts drastically with the quick schedule in this case, which includes a September 2012 trial date, and thus will conclude years before the reexaminations are complete.  A stay therefore would substantially prejudice Helicos by denying it a much quicker and certain forum, one that will resolve all issues in this case—not a narrow subset of issues.  A stay also would deprive Helicos of its right to enforce the exclusivity of the patents-in-suit against Defendants, who are Helicos's direct competitors.  Additionally, a lengthy and indefinite stay would present a substantial risk that memories will fade, witnesses will become unavailable and evidence will be lost.   Thus, a stay would inflict a clear tactical disadvantage to Helicos, and obstruct its ability to prove its case once the litigation resumes.

Furthermore, this litigation is in a far more advanced stage than the reexamination proceedings.  A stay would undermine the significant time and effort Helicos has expended thus far in this litigation, the potential for near term mediation, and the case schedule.

This Court has routinely denied motions to stay pending reexamination under circumstances such as these.  Indeed, Defendants Life and Illumina recently litigated a motion to stay pending *inter partes* reexamination in this Court in *Life Techs. Corp. v. Illumina, Inc.*, No.

09-709-RK, 2010 WL 2348737 (D. Del. June 7, 2010).  The court denied that motion to stay.[2]

Perhaps not surprisingly, therefore, neither Life nor Illumina has joined PacBio's Motion to Stay.

PacBio's motion is based on little more than PacBio's hope for a good outcome at the Patent

Office.  But that hope does not, and cannot overcome the irreparable prejudice Helicos will

suffer by the lengthy and indeterminate delay a stay would impose.  And in the event that the

reexamination result is adverse to PacBio, the Court and the parties will be no better off, which is

the outcome that is the most likely one here.  PacBio's Motion to Stay should be denied.

## III.   STATEMENT OF FACTS

### A.   Fact Discovery Is Well Underway

This litigation is in full-swing, and Helicos is eager to vindicate its patent rights.  Since

Helicos filed its Amended Complaint in October 2010, both this Court and the parties have

invested significant time, effort and resources in this case.  Fact discovery opened on January 12,

2011.  Helicos served both document requests and interrogatories that same day.  Two days later,

the parties exchanged initial disclosures.  Defendants served their interrogatories on March 1,

2011, and Illumina and PacBio served document requests on January 24 and March 11, 2011,

respectively.  Document discovery closes on July 15, 2011—little more than two months from

now—and fact discovery closes less than five months after that, on January 13, 2012.  D.I. 39

(Rule 16 Order) 2-3.

Helicos has provided substantial and meaningful discovery to Defendants.  Helicos

provided exhaustive responses to Defendants' interrogatories, including more than 150 pages of

claim charts detailing Helicos's infringement contentions against each of the Defendants on a

---

[2] In its opposition brief, Illumina argued that "[m]otions to stay patent cases pending re-examination of the patents-in-suit are not, and should not be, routinely granted."  Ex. B (Illumina Opp'n Br.) 1.  Helicos agrees.

claim-by-claim, element-by-element basis.  *See* Ex. C (Helicos's Interrogatory Responses).

Additionally, Helicos provided written responses to a combined 175 requests for production.[3]

      Helicos also invested significant resources in preparing to produce, and producing documents.  Even before fact discovery commenced, Helicos began identifying and collecting responsive documents.  *See* Clements Decl. in Support of Helicos's Ans. Br. In Opp. to Mot. to Stay ("Clements Decl.") ¶¶ 4-5.  Helicos informed both PacBio and Illumina in early April that it expected to produce documents within a couple of weeks, and would proceed with a rolling production according to this schedule.  *See* Greene Decl. ¶¶ 4-5, 8.  Since April 28, 2011, Helicos has produced the equivalent of approximately 74,000 pages of responsive documents, including marketing materials, website content, and patent prosecution files.  *See* Clements Decl. ¶ 6.  Each Defendant has represented to Helicos that it had undertaken document collection efforts.  *See* Greene Decl. ¶¶ 4, 6; Ex. D (5/3/11 Email from D. Walter to B. Greene).

      B.    <u>Defendants Have Not Timely Advanced The Protective Order</u>

      While Helicos has invested significantly in discovery, this case would be advanced further but for Defendants' delay in negotiating a Protective Order.  Helicos has collected and sorted through more than *five terabytes* of potentially responsive documents over the last six months and identified and prepared more than 30 gigabytes of that collection for production.  *See* Clements Decl. ¶ 6.  To cost-effectively produce this volume of data, it is necessary to have an adequate safeguard against the inadvertent production of privileged documents.  Helicos sent Defendants a proposed Protective Order containing such a clawback provision providing this safeguard, for review and comment on February 25, 2011.  *See* Ex. E (2/25/11 Email from S.

---

[3] PacBio characterizes Helicos's responses as "basic form," (D.I. 53 (Stay Br.) 8), which Helicos's responses are anything but.  Helicos thoroughly reviewed each of PacBio's *108 requests* and provided responses that were proper and justifiable.  More importantly, Helicos collected documents responsive to these 108 requests.

Garko to J. Costakos et al.).

Only Life provided comments to which Helicos responded with a revision six weeks ago. *See* Exs. F-G (3/11 Emails between P. Veravanich and S. Garko). For weeks, Helicos received no counter-proposal—or any comments at all—from the Defendants, despite having repeatedly sought their feedback. *See* Exs. H-L (Correspondence re: Protective Order). Just days ago, Defendants sent Helicos their first counter-proposal (still subject to forthcoming revisions from Life)—*more than two months after receiving Helicos's draft. See* Ex. M (5/2/11 Email from D. Walter to B. Greene). The absence of a working Protective Order has delayed document production in this case and the normal progression of discovery.[4]

      C.    The Four Reexamination Proceedings Have Only Just Begun

In contrast to the progress made in this litigation, the four reexaminations have just started. PacBio requested *inter partes* reexamination on the '687, '560, '596, and '400 patents on January 27, 2011, five months after the filing of the original complaint. *See* D.I. 53 (Stay Br.) Exs. 2-5. The Patent Office granted the requests only in the past two months (the last one occurring as late as April 13, 2011). *See* D.I. 53 (Stay Br.) Exs. 6-9. Helicos filed its first office action response in the reexamination proceedings (for the '596 patent) merely two days ago, and the office action responses in the other proceedings are not due for several weeks.[5]

**IV.**    **ARGUMENT**

Courts consider three general factors when deciding whether to grant a motion to stay pending reexamination: (1) whether a stay will simplify the issues for trial; (2) whether the granting of a stay would cause the non-moving party to suffer undue prejudice from any delay or

---

[4] While Local Rule 26.2 provides confidentiality protection for the production of confidential documents, it lacks adequate protections for the inadvertent production of privileged materials.

[5] The first office action responses for the '560, '400, and '687 patent reexaminations are due on May 31, June 10, and June 13, 2011, respectively.

allow the moving party to gain a clear tactical advantage over the non-moving party; and (3) whether discovery is complete and a trial date set. *Belden*, 2010 WL 3522327, at *2. All of these factors indicate the Court should deny PacBio's motion and refuse to stay this case.

A. **A Stay Will Not Simplify The Issues For Trial Because Defendants Have Pleaded Numerous Defenses That Do Not Overlap With The Reexamination Issues, The '109 Patent Is Not In Reexamination, And Life And Illumina Will Argue That They May Freely Raise Any Issues That PacBio Raises In The Reexaminations**

1. This Case Has Numerous Distinct Issues That Do Not Overlap With The Issues Being Evaluated In The Reexaminations

PacBio's argument that a stay will promote judicial efficiency rests entirely on speculative, best-case-for-PacBio scenarios. In addition, PacBio failed to provide any rigorous overlap analysis demanded by this Court's caselaw. "[A] stay is more appropriate when the only issues left for trial completely overlap with those typically resolved upon reexamination. Conversely a stay is not favored when infringement, validity under 35 U.S.C. § 112, or other issues outside the purview of reexamination remain to be tried." *Belden*, 2010 WL 3522327 at *2. Here, many issues related to the patents-in-reexamination will remain unresolved if a stay were entered. The reexaminations address no invalidity defenses other than those based upon patents and printed publications under 35 U.S.C. §§ 102 and 103. *See* D.I. 53 (Stay Br.) Exs. 6-9. Yet all Defendants have pleaded multiple defenses *unrelated to this limited patentability review*, as illustrated by the table below:

| PacBio | Illumina | Life |
|---|---|---|
| Non-infringement (all 4 patents asserted) | Non-infringement (all 3 patents asserted) | Non-infringement (all 3 patents asserted) |
| Section 101 (all 4 patents asserted) | Section 101 (all 3 patents asserted) | Section 112 (all 3 patents asserted) |
| Section 112 (all 4 patents asserted) | Section 112 (all 3 patents asserted) | Section 116 (all 3 patents asserted) |

7

| | | |
|---|---|---|
| Section 116 (all 4 patents asserted) | Inequitable Conduct ('560 patent) | Prosecution History Estoppel (all 3 patents asserted) |
| Inequitable Conduct ('596 and '560 patents) | Estoppel (all 3 patents asserted) | Adequate Remedy at Law (all 3 patents asserted) |
| Patent Misuse (all 4 patents asserted) | Laches (all 3 patents asserted) | Lack of Standing (all 3 patents asserted) |
| Estoppel (all 4 patents asserted) | Adequate Remedy at Law (all 3 patents asserted) | Failure to State a Claim |
| Laches (all 4 patents asserted) | Lack of Standing (all 5 patents-in-suit) | |
| Waiver (all 4 patents asserted) | Failure to State a Claim | |
| Unclean Hands (all 4 patents asserted) | Misjoinder | |
| Other Equitable Doctrines (all 4 patents asserted) | | |
| Prosecution History Estoppel (all 4 patents asserted) | | |
| Adequate Remedy at Law (all 4 patents asserted) | | |
| Lack of Standing (all 5 patents-in-suit) | | |
| Failure to State a Claim | | |

The reexamination proceedings also do not overlap *in any way* with the '109 patent, *because it is not in reexamination*. Reexaminations of the '687, '560, '596, and '400 patents will not streamline any of the legal or factual issues related to the '109 patent, delaying the core infringement issues unnecessarily and without justification. *See APP Pharms., LLC v. Ameridose LLC*, No. 10-4109 (JAP), 2011 WL 816622, at *2 (D.N.J. Mar. 8, 2011) (denying stay pending reexamination and finding that "[o]f particular note is that the reexamination proceedings will not resolve this case in its entirety" because one of the patents-in-suit was not subject to reexamination).

Infringement of all five patents also remains to be tried in this case, and PacBio and Illumina have asserted multiple inequitable conduct theories.  Notably, this Court has held that a stay is disfavored where these two issues remain for trial.  *See Oracle Corp. v. Parallel Networks, LLP*, No. 06-414-SLR, 2010 WL 3613851, at *2 (D. Del. Sept. 8, 2010) (Robinson, J.) (denying stay pending reexamination).  While PacBio has argued that the reexaminations have the potential to invalidate the claims, that position is founded on a best-case scenario statistic that is highly unlikely.  Indeed, the Patent Office indicates that all claims are canceled only 45% of the time.  Ex. A (3/31/11 PTO Stats).  Thus, the probability of all claims being canceled—completely eliminating an infringement issue—is roughly a flip of the coin for each patent in reexamination.  A simple probability analysis means the chance for eliminating all infringement issues from this case is 0.5 x 0.5 x 0.5 x 0.5 = 0.0625 or 6.25%.

Recognizing that the '109 patent will be unaffected by the outcome of the reexaminations, PacBio hedges its relief request, and boldly proposes that the Court simply stay the case with respect to the four patents-in-reexamination, while allowing the '109 patent to proceed in isolation against only Illumina.  But this proposal only underscores that a stay will not streamline this case.

Staying all proceedings for the '687, '560, '596, and '400 patents will duplicate effort and expense for the parties, while making inefficient use of judicial resources.  From a trial and discovery standpoint, the '109 patent presents some overlapping technical issues to those presented by the other four patents-in-suit.  For example, the patents-in-reexamination relate to methods for sequencing and will require discovery and expert testimony explaining the sequencing reactions and detection of incorporated nucleotides.  Specifically, each of the '687, '560, and '596 patents claims the steps of "identifying" or "detecting" the nucleotides

incorporated during the sequencing reaction, and the '400 patent claims the step of "conducting a sequencing-by-synthesis reaction using detectably labeled nucleotides." The '109 patent relates to an apparatus used to detect incorporated nucleotides. Dependent claims of the '109 patent relate to the nucleotides and primers used in the sequencing reaction. Thus, with respect to the '109 patent, this Court, the litigants, the experts and the jury will need to invest time and resources into understanding sequencing reactions and detection technologies—issues that will need to be readdressed when the other four patents-in-suit come out of reexamination. This disserves judicial economy and weighs against a stay. *See Life Techs.*, 2010 WL 2348737, at *3 (denying stay pending reexamination of counterclaim patents where patents in the original complaint were not in reexamination and noting that if a stay is granted, "there is a strong possibility that we will have to try the issues before two different juries, each of which would have to go through the same educational process"). Indeed, the *Life Techs.* case involved technology in the same technical space: DNA sequencing. For similar reasons, a stay will provide virtually no saving of the Court's or the jury's time, and thus, no streamlining will occur.

2.   <u>Because Life And Illumina Are Not Parties To The Reexaminations, Presumably They Will Argue That They Are Not Estopped From Proffering The Same Arguments To This Court That PacBio Will Make In The Reexaminations</u>

Since Life and Illumina are not parties to the reexamination, they can be expected to argue that they should not be estopped at trial from pursuing the same invalidity arguments that PacBio raises or could raise in the reexaminations. *See* 35 U.S.C. § 315(c) (Requester of an *inter partes* reexamination is estopped.) If the Court were to agree, a primary benefit of reexamination would be meaningless here, because in the likely event that one or more claims of the four patents-in-reexamination are confirmed, a stay would only allow Life and Illumina *to take their shot* at arguing the same references invalidate the confirmed claims. *See Stormedia*

10

*Tex., LLC v. CompUSA, Inc.*, No. 2:07-CV-025, 2008 WL 2885814, at *1 (E.D. Tex. July 23, 2008) (denying stay in part because the statutory estoppel did not apply to the defendants not party to the reexamination).

3.   PacBio's Own Caselaw Illustrates That This Court Should Accord Little Weight To The Alleged Benefits of a Stay

PacBio cites *Pegasus Dev. Corp. v. Directv, Inc.*, No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003) for a laundry list of alleged "downstream benefits of a stay pending reexamination." *See* D.I. 53 (Stay Br.) 10-11. But these purported "benefits" are little more than a generic recitation of best-case outcomes with no linking explanation as to how these factors relate in any meaningful way to this case. Moreover, the subsequent history of *Pegasus* illustrates that the promised benefits of a stay pending reexamination are usually illusory. Non-moving Defendant Illumina has recognized this very point:

> Life Tech speculates about the probability that its proposed stay will yield real-world benefits for this Court and the parties, but the reality doesn't bear this out. For a real-world example of this, one need only look at the results of the stay in the *Pegasus* case before Judge Sleet in this District, a case on which Life Tech repeatedly relies in its brief. Pegasus filed suit in 2000. Judge Sleet granted the defendant's motion to stay the case in 2003. In 2009, more than *six years* after the stay was entered, the Patent Office finally confirmed that many of the patent claims asserted by Pegasus were indeed valid. The re-examinations are still not over, however, because Pegasus requested a rehearing relative to a few claims found to be invalid by the Patent Office. ***In any event, contrary to the benefits that the accused infringer promised him when seeking the stay, Judge Sleet now faces, ten years after the case was filed, a resumption of Pegasus's patent-infringement case, in which many of the same patent claims that were first asserted ten years ago by Pegasus are still at issue, unchanged from when the stay was granted. There is every reason to believe that this Court will face the same unfulfilled promises many years from now if it grants Life Tech's request for a stay here.***

Ex. B (Illumina's Opp'n) 8 (emphasis added) (internal citations omitted).

*Pegasus* is a real-world example demonstrating that the benefits of reexamination are usually overstated, and rarely meaningful. Indeed, PacBio fails to offer any evidence showing *in*

*this case* (1) how reexamination will alleviate discovery problems relating to the prior art; (2) how the reexamination record will reduce the complexity[6] and length of litigation; (3) how reexamination will allow the issues, defenses, and evidence to be more easily limited in pre-trial conferences; (4) how the outcome of reexamination may encourage settlement. Nor can PacBio make any of these showings, because the reexaminations are simply at too early of a stage to act as any type of meaningful predictor of the effect, if any, on this litigation. And more importantly, the promise of *potential benefits* should not outweigh the substantial and concrete prejudice that a long, indefinite delay will have on Helicos. This is particularly true when an objective lens is applied, one that considers outcomes other than PacBio's self-serving, best-case scenario. The risk of having this litigation linger for years, only to resume without any countervailing benefits, is simply too great and too prejudicial.

4.   Helicos's Standing Is A Matter For This Court To Resolve And Has No Overlap With The Reexamination Proceedings

PacBio's argument that a stay may moot the standing issue in this case is misplaced and, in fact, supports proceeding with this litigation, not staying it. *See* D.I. 53 (Stay Br.) 3, 12-13. The reexaminations have no bearing on Helicos's standing. To the extent that PacBio disputes Helicos's standing—a meritless argument but one which PacBio surely will litigate—that matter is for the Court to resolve, and staying this case will serve only to delay resolution of that issue.

**B.   A Stay Will Unduly Prejudice Helicos Because The Reexaminations Have Barely Progressed**

To determine whether a stay will prejudice the non-moving party, the court considers (1) the status of reexamination proceedings; (2) the relationship of the parties; (3) the timing of the request for reexamination; and (4) the timing of the request for stay. *Belden*, 2010 WL 3522327,

---

[6] Indeed, this Court may face more complex claim construction issues following a stay as the parties address the meaning of the reexaminations and the statements made by Helicos, PacBio and the Patent Office. *See Roy-G-Biv Corp. v. Fanuc Ltd.*, No. 2:07-CV-418 (DF), 2009 WL 1080854, at *2 (E.D. Tex. Apr. 14, 2009).

at *2-3.[7]  Each one of these factors illustrates the undue prejudice that Helicos will suffer if this case is stayed.

1.     The Reexaminations Have Barely Progressed, Weighing Against A Stay

This Court has noted that "only those reexamination proceedings that have been substantially completed will weigh in favor of a stay."  *Belden*, 2010 WL 3522327, at *3.  Here, each of the four reexaminations is at the earliest stages of the process.  Helicos responded to the first office action on May 10, 2011, just two days ago, and its responses in the remaining reexaminations are not due until May 31, June 10, and June 13, 2011.  Following those first responses, PacBio will have 30 days to file comments, which in all likelihood it will.  *See* 35 U.S.C. § 314(b)(2).  There is no fixed deadline for the Patent Office to take further action.

"[R]eexamination is an arduous process fraught with the potential for multiple appeals."  *Belden*, 2010 WL 3522327, at *3.  According to statistics published by the Patent Office, the average pendency of an *inter partes* reexamination is over three years from the filing date.  Ex. A (3/31/11 PTO Stats).  Commentators who have analyzed reexamination proceedings have calculated the average pendency for *inter partes* reexamination through the appeal process to be much longer—at least 6.5 years.  *See* Ex. N (Institute for Progress) 1, 5;[8] *see also BarTex Research, LLC v. FedEx Corp.*, 611 F. Supp. 2d 647, 651 (E.D. Tex. 2009) (citing Institute for Progress study and noting that a "stay could potentially prevent BarTex from enforcing its rights

---

[7] PacBio misleadingly suggests that "the remaining term of the asserted patents" is a separate factor to be analyzed.  *See* D.I. 53 (Stay Br.) 13.  Neither case cited by PacBio supports this proposition.  *Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, No. 10-503-SLR, 2010 WL 4823393, at *2 (D. Del. Nov. 22, 2010), recites the four prejudice factors above.  *Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*, No. 09-571-JJF, 2010 WL 2573925, at *3 (D. Del. June 25, 2010), does not recite any prejudice factors.

[8] "The result of this calculation is that average pendency (assuming no 'rework' by the patent office and no secondary appeals to the BPAI, the Federal Circuit, or the Supreme Court) is 78.4 months – slightly longer than 6.5 years.  A 95% confidence interval suggests an average pendency for appealed cases (again, assuming no rework) is between 5 and 8 years (60-97 months)!  Given that the only three *inter partes* reexam cases that have received a BPAI decision all require further 'rework' and a subject to further appeal, these estimates may be highly conservative."  Ex. N (Institute for Progress) 5.

13

for 6.5 years").   In the *Belden* case, this Court recognized that in 2009, the Patent Office averaged 649 days between the issuance of a right of appeal notice and the subsequent docketing of the appeal, and an additional 234 days between docketing and rendering of a BPAI decision. *Belden*, 2010 WL 3522327, at *3 n.3.   This is nearly 2.5 years just to appeal within the Patent Office, and does not even account for the time to appeal to the Federal Circuit.

There is nothing to suggest that each of these reexaminations will conclude in any less time than the average 6.5 years as either Helicos or PacBio (because of statutory estoppel) most certainly will exhaust its appeal rights, including one to the Federal Circuit.   While PacBio argues that the Patent Office has addressed the reexaminations "diligently," (D.I. 53 (Stay Br.) 14), the statistics belie PacBio's assertion that a stay in this case will not be lengthy.   Moreover, the fact that the Patent Office rejected the claims in its initial office actions is by no means indicative of the ultimate result in the proceedings.   *Cf. Roy-G-Biv*, 2009 WL 1080854, at *2 ("It is difficult to gauge, at this early stage in the reexamination process, how likely it is that any of RGB's patent claims will be cancelled or modified through amendment.").

Furthermore, PacBio's statistics are misleading and therefore not useful for predicting the ultimate result of the reexaminations.   PacBio's states that "on average, 89% of reexaminations initiated by a third party result in at least some cancelled or amended claims."   D.I. 53 (Stay Br.) 10.   But this says nothing about the number of claims that go through reexamination unamended. For example, a patentee may amend one claim but leave ten other claims unchanged.   That patent would still fall in the 89% statistic even though the patent scope has not changed materially.   Nor does this statistic correlate in any respect with the idea that claim amendments necessarily mean the litigation issues will narrow.   Patent trials usually only involve a handful of the best claims— those broad enough to allow for infringement, while narrow enough to avoid the prior art.   The

best claims are the most likely to escape without amendment during reexamination.  The cited

Patent Office statistics do not in any sense shed light on this fundamental issue.

        2.      <u>Because The Trial Date Is On-Calendar And Will Occur Long Before The Reexaminations Conclude, A Stay Will Unduly Prejudice Helicos And Allow Defendants To Gain A Clear Tactical Advantage</u>

The slow and uncertain reexamination process stands in stark contrast to the existing

schedule in this case.  A jury will render its verdict in this case in a mere sixteen months.  The

Federal Circuit will likely decide any appeal within twelve months.  *See* Ex. O (Fed. Cir. Stats)

(median disposition time for district court appeals is 11.7 months).  The most conservative

estimates indicate that each of the four reexaminations will last a minimum of three years.  *See*

Ex. A (3/31/11 PTO Stats).  Accordingly, even the earliest expected date for completion of the

reexaminations will be substantially later than the issued verdict in this case and will likely

outlast any appeal.   And applying the more appropriate estimate of 6.5 years for the

reexaminations, it is near certain that this litigation will conclude (through appeals) years before

the reexaminations are complete.  Helicos is substantially prejudiced if it is denied a much

quicker and certain resolution on *all issues* in the litigation, based on the speculative possibility

that an administrative proceeding might affect *only a small subset of the invalidity issues*.

Moreover, this Court should not defer to the much slower Patent Office, where a final

decision in this litigation will foreclose the four reexaminations with respect to the asserted

claims.  *See* 35 U.S.C. § 317(b) ("Once a final decision has been entered against a party in a civil

action . . . that the party has not sustained its burden of proving the invalidity of any patent claim

in suit . . . an inter partes reexamination requested by that party or its privies on the basis of such

issues may not thereafter be maintained by the Office . . . .").

3.     A Lengthy Stay Severely Prejudices Helicos's Right To Exclusivity

If granted, a stay also will deprive Helicos of its right to enforce the exclusivity of the patents-in-suit against Defendants and therefore effectively will grant Defendants a compulsory license to the patents for at least 6.5 years.[9]   *See Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865-LPS, 2010 WL 5149351, at *4 (D. Del. Dec. 13, 2010).   This not only will unduly prejudice Helicos,[10] but the long delay also will not serve the efficient administration of justice. *See ESN, LLC v. Cisco Sys., Inc.*, No. 5:08-CV-20, 2008 WL 6722763, at *3 (E.D. Tex. Nov. 20, 2008) ("The principle that justice delayed is justice denied applies with full force to the patent process.   Staying this case for six-plus years when this Court can resolve the matter more expeditiously is unfairly prejudicial to [plaintiff] ESN.") (quotation marks omitted).   And in this case, the prejudice to Helicos will be particularly undue if it is compelled to wait 6.5 years or more to even begin adjudicating the '109 patent, which is not subject to reexamination.

4.     A Lengthy Stay May Result In Lost Evidence And Lost Witnesses

Finally, Helicos may suffer a clear tactical disadvantage in proving its case due to lost evidence as a result of a stay lasting 6.5 years or more.   This Court has explained the disproportionate difficulty each party faces in meeting its burden of proof following a stay:

> Given the early stage of the reexamination, and the average length it takes to complete a reexamination (including appeals), it follows that the stay, if granted, would almost certainly last many years.   Resuming this litigation after a protracted stay would likely raise issues with stale evidence, faded memories, and lost documents.   Much of the evidence Cooper must amass to prove infringement exists in the minds of witnesses, whose memories will inevitably fade, and who

---

[9] Contrary to PacBio's suggestion, Helicos did not delay in filing this suit.   *See* D.I. 53 (Stay Br.) 17.   The 2008 articles cited by Helicos do not evidence otherwise.   PacBio did not start shipping beta models until shortly before Helicos filed suit.   *See* D.I. 1 (Complaint) Ex. F at 61; Ex. P (PacBio Release).   Until commercial units shipped, Helicos could not know whether PacBio would modify its technology, or abandon it altogether.

[10] A stay also may effectively eviscerate any meaningful term of the '596 and '687 patents.   The terms for these patents expire in eight and nine years, respectively, from the filing dates of the reexamination requests.   The reexaminations may take 6.5 years *or more* to complete.   Therefore, a stay may continue for the lives of these patents, or a substantial portion thereof (the remainder of which will surely be spent in litigation, once resumed).

may be difficult to find as time passes.  Infringement will also depend to some extent on how Defendants' accused products and services function today, which will be harder to prove years from now.  By contrast, some of the matters on which Defendants bear the burden, such as invalidity of the '428 patent due to anticipation or obviousness, may not grow more difficult to prove, as they are based largely on prior art references, which do not change.

*Cooper*, 2010 WL 5149351, at *4.  No mechanism exists in the reexaminations for Helicos to seek discovery from Defendants.  Therefore, the longer a stay lasts, the more tactical advantage Defendants will gain.

5.  Helicos Has Been and Continues To Be A Direct Competitor of Defendants

The prejudice to Helicos only is increased because Helicos and Defendants are direct competitors.  Defendants Illumina and Life both admit in their public filings that Helicos is a competitor.  *See* Ex. Q (Illumina 2010 Form 10-K) 15; Ex. R (Life 2010 Form 10-K) Ex. 10.78 at 7.  As this Court has recognized, "[c]ourts are reluctant to stay proceedings where the parties are direct competitors."  *Cooper*, 2010 WL 5149351, at *5.

PacBio wrongly contends that Helicos no longer competes with Defendants.  *See* D.I. 53 (Stay Br.) 15-16.  Helicos continues to be a viable business entity and to commercialize its technology.  In the same 10-K paragraph cited by PacBio, Helicos also stated that "any revenues in the foreseeable future will be derived primarily from . . . the sale of sequencing services . . . and from the sale of consumables to our installed base of customers."  Ex. S (Helicos 2010 10-K) 17.  Defendants are direct competitors in these markets.[11]

Furthermore, to the extent that Helicos shifted its business strategy to focus on licensing

---

[11] *See, e.g.*, Ex. T (PacBio 2010 10-K) 6 ("To run our PacBio RS, our customers must purchase our proprietary consumable products."); Ex. Q (Illumina 2010 10-K) 4 ("Our broad portfolio of systems, consumables, and analysis tools are designed to simplify genetic analysis."), 7 ("In June 2009, we launched our Individual Genome Sequencing Service, the first physician-intermediated personal genome sequencing service for consumers."); Ex. R (Life 2010 10-K) 2 ("Our systems, consumables and services enable scientific researchers and commercial markets to accelerate scientific exploration . . . .").

and enforcement, a stay will irreparably injure and unduly prejudice Helicos by undermining a primary business strategy for many years.[12]  *Cf. BarTex*, 611 F. Supp. 2d at 652 ("The right to exclude, even for a non-practicing entity, may be the only way to fully vindicate the patentee's ownership in the patent.").  Because this litigation involves three of the primary next-generation sequencing companies, a stay effectively will deny Helicos any meaningful right to enforce the patents-in-suit, thereby unduly compromising Helicos's ability to monetize these patents.

6.  Pacbio Likely Filed The Reexamination Requests And Motion To Stay As A Litigation Delay Tactic

The remaining factors courts consider in determining whether to enter the stay—the timing of the request for reexamination and the timing of the request for the stay—further demonstrate prejudice to Helicos.

This Court has recognized that the "emerging trend in patent litigation" is for accused infringers to file a request for reexamination in response to a complaint for patent infringement.  *See Belden*, 2010 WL 3522327, at *1.  To grant these motions routinely not only provides an accused infringer with the unfair tactical advantage of its choice of forum but also risks holding the judicial system hostage to the administrative Patent Office proceeding.  *See Cooper*, 2010 WL 5149351, at *3 ("Staying this litigation in favor of the PTO proceeding would grant Defendants their choice of forum—here, for no good reason."); *BarTex*, 611 F. Supp. 2d at 652 ("[T]here exists no policy in this Court to routinely grant such motions [to stay].  To do so would turn reexamination into an administrative process that must be completed before a suit for patent infringement may move forward.") (internal citations omitted).

---

[12] Contrary to PacBio's assertion, there is no reason to believe that Helicos will not be entitled to injunctive relief.  *See* D.I. 53 (Stay Br.) 16-18.  PacBio suggests that Helicos is a non-practicing entity, but, as indicated above, this is not the case.  Even if Helicos was a non-practicing entity, it could be awarded injunctive relief.  PacBio cites *eBay* for the contrary proposition, but *eBay* refused to adopt a categorical rule that non-practicing entities cannot obtain injunctive relief.  *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 393 (2006).

### C.     A Trial Date Has Been Set And Discovery Is Underway

The significant investment of resources expended in this litigation to date—particularly by Helicos—indicates that the Court should not enter a stay.

The parties have been actively engaged in discovery, and a two-week jury trial will occur in only sixteen months.  *See supra* Sections I, III.A.  Magistrate Judge Thynge set aside two dates in her schedule for mediation, which could resolve this case within the next few months. The Court has previously emphasized that a set schedule—such as is in place here—favors denying a stay motion.  *See Cooper*, 2010 WL 5149351, at *3.  ("[I]t is noteworthy that a schedule is in place and a ten-day jury trial is on the Court's calendar.")

While PacBio contends that the status of this litigation weighs in favor of a stay, its arguments and its cases are unavailing, distinguishable.  In *Vehicle IP*, 2010 WL 4823393, at *1, no discovery had been conducted, a final scheduling order had not issued, and the *ex parte* request for reexamination was filed more than three months *prior to* commencement of the litigation.  In *Enhanced Sec.*, 2010 WL 2573925, at *1, 3, no trial date had been set and one of the reexaminations at issue was filed *prior to* commencement of the litigation.  *Pegasus*, 2003 WL 21105073, at *1-2, was a particularly complex and "extraordinary" case, as evidenced by the 300 related patent applications containing approximately 10,000 claims, such that the court held that it would benefit from a narrowing of the issues "in this case, more than many."  The decision in *Rohm & Haas Co. v. Brotech Corp.*, No. 90-109-SLR, 1992 U.S. Dist. LEXIS 3252 (D. Del. Mar. 11, 1992), is not relevant.  The Court issued this decision more than seven years before the Patent Office's introduction of the *inter partes* reexamination process.

While PacBio argues that Defendants "have thus far invested relatively little in this case," (D.I. 53 (Stay Br.) 8), this argument is self-serving and irrelevant.  Helicos has diligently requested discovery, but defendants have largely delayed, objected, or both.  PacBio cannot base

19

a stay request on its own failure to provide discovery in this case.  Thus, the real measure is not Defendants' investment but Helicos's.  That is the only criteria that should matter.  Indeed, Defendants' reluctance has caused Helicos to invest more in this case, including  (1) conferences with each Defendant regarding their respective deficiencies in early April (2) continued discussions even after the filing date of PacBio's Motion to Stay; and (3) repeated efforts to resolve the Protective Order.  *See* Greene Decl. ¶¶ 3-7, 9; Exs. E-L (Correspondence re: Protective Order); Exs. U-X (Letters re: Meet and Confer).  Defendants should not be rewarded with a stay by delaying the progression of this case and for shirking their discovery obligations.

### D. <u>Proceeding With The Litigation Will Not Cause PacBio Hardship Or Inequity</u>

Finally, in determining whether to grant a stay pending *inter partes* reexamination, this Court also has considered whether the moving party has shown that it would suffer a hardship or inequity in the absence of a stay.  *See Cooper*, 2010 WL 5149351, at *2.  PacBio has made no such showing here, nor can it.  Without a stay, this litigation will proceed in its ordinary course.  PacBio will invest the same resources in this case whether or not this Court grants a stay.  In fact, because a stay will not streamline this litigation, PacBio ultimately may invest more resources in this case following a stay.  This further evidences that a stay is not warranted.  *See id.* (noting that defendants' failure to articulate a clear hardship or inequity they would suffer in the absence of a stay weighs against a granting a stay).

## V. <u>CONCLUSION</u>

For all of the reasons stated above, Helicos respectfully requests this Court to deny PacBio's Motion to Stay this litigation with respect to all five patents-in-suit and, alternatively, with respect to the '687, '560, '596 and '400 patents pending reexamination.

May 12, 2011

BAYARD, P.A.

/s/ *Richard D. Kirk*
Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
rkirk@bayardlaw.com
sbauerman@bayardlaw.com

*Attorneys for Helicos BioSciences Corporation*

OF COUNSEL:

Douglas J. Kline
Brian A. Fairchild
Sheryl Koval Garko
GOODWIN PROCTER LLP
53 State Street
Boston, MA  02109
(617) 570-1000

Kurt M. Kjelland
GOODWIN PROCTER LLP
4365 Executive Drive
3rd Floor
San Diego, CA  92121
(858) 202-2700