IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

HELICOS BIOSCIENCES )
CORPORATION, )
)
Plaintiff, )
)
v. ) Civ. No. 10-735-SLR
)
ILLUMINA, INC., et al., )
)
Defendants. )

Richard D. Kirk, Esquire and Stephen B. Brauerman, Esquire of Bayard, P.A., Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Douglas J. Kline, Esquire, Daniel M. Forman, Esquire, Brian A. Fairchild, Esquire, Sheryl Koval Garko, Esquire, James D. Clements, Esquire, Blake B. Greene, Esquire and Kurt M. Kjelland, Esquire of Goodwin Procter LLP; David I. Gindler, Esquire of Irell & Manella LLP.

Richard L. Horwitz, Esquire and David E. Moore, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Edward R. Reines, Esquire, Derek C. Walter, Esquire and Sean O'Rourke, Esquire of Weil, Gotschal & Manges LLP.

**MEMORANDUM OPINION**

Dated: May 3, 2012
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Pending before the court is a motion to transfer venue to the Northern District of California filed by defendants Pacific Biosciences of California, Inc. ("PacBio:), Life Technologies Corporation ("Life") and Illumina, Inc. ("Illumina"). For purposes of exploring the papers filed by each party, the court held an evidentiary hearing on February 16, 2012. The court has jurisdiction to hear this motion pursuant to 28 U.S.C. § 1338. Venue is appropriate pursuant to 28 U.S.C. § 1400(b). For the reasons that follow, the court will deny the motion.

## II. BACKGROUND

### A. The Parties

Plaintiff Helicos Biosciences Corporation ("Helicos") is incorporated in Delaware with its principal place of business in Cambridge, Massachusetts. Helicos, which started out as a biotech sequencing company, now employs ten employees and focuses on its patent enforcement business. (D.I. 187 at 3; D.I. 244 at 17, 36) Plaintiff Arizona Science and Technology Enterprises LLC (d/b/a Arizona Technology Enterprises) ("AzTE")), an Arizona corporation, is an "intellectual property development affiliate of Arizona State University and is located in Phoenix, Arizona." (D.I. 169 at 2) AzTE is "essentially a holding organization for the two Arizona State patents to which Helicos allegedly has an exclusive license." (Id,)

Defendant Illumina is a publicly-traded company incorporated in Delaware. Illumina has approximately 2,000 employees worldwide, with most of them (approximately 1,400) working in or near San Diego, California and the rest working in

Illumina's commercial offices located in seven countries.  (D.I. 187 at 3; D.I. 244 at 30)

Illumina generated over $900 million in revenue in the United States alone in 2010.

(D.I. 187 at 3)  Illumina is a "biotech tool maker;" the accused product in this case

involves DNA sequencing.  Illumina's sequencing instruments were largely developed

by a company Illumina acquired in 2007;  the chemistry was largely developed in the

United Kingdom.  (D.I. 244 at 29-30)   Illumina has installed two of its DNA sequencing

platforms at the University of Delaware, has given presentations concerning its

sequencing systems at the University, and has provided customer training and

performed sequencing runs at the University.  (D.I. 187 at 4; D.I. 244 at 31)

Defendant Life is a publicly-traded company incorporated in Delaware, with its

principal place of business in or near  San Diego, California.  Life represents itself as a

"global biotechnology tools company" with over $3.3 billion in sales, 9,000 employees

and a presence in 160 countries.  (D.I. 187 at 4)

PacBio is a publicly-traded company incorporated in Delaware, with its principal

place of business in Menlo Park, California.  (D.I. 187 at 3; D.I. 244 at 20)  PacBio

started commercializing its products in 2011 and had revenue from product sales in the

approximate amount of $34 million.  (D.I. 244 at 20)  PacBio has 300 employees and

has shipped its products on a national and international scale.  (D.I. 187 at 3; D.I. 244

at 20)  Like Illumina, PacBio has installed one of its instruments at the University of

Delaware, and has provided customer training and performed sequencing runs at the

University.  (D.I. 187 at 4)

### B. The Parties' Litigation History

With the exception of PacBio, which has not previously been engaged in

2

litigation outside of California, both Illumina and Life have litigated extensively in fora

other than California.  Indeed, Illumina has been involved in litigating as many cases in

Delaware as it has in California.  (D.I. 187 at 5; D.I. 188, ex. N)  The remaining Illumina

litigations have been scattered throughout the country, including Massachusetts,

Washington and Wisconsin.  (*Id.*)  Life has also been involved in litigations throughout

the country, with nearly half of those litigations occurring in Delaware, Maryland and

New York.  (D.I. 187 at 5; D.I. 188, ex. I)  In the past, both Illumina and Life have

opposed motions to transfer venue to the Northern District of California.  (D.I. 187 at 5,

citing cases).

## III.  STANDARD OF REVIEW

Since the Act of 1897, when Congress first enacted what is now 28 U.S.C. §

1400(b),[1] any civil action for patent infringement could be brought in the judicial district

in which the defendant was incorporated.  Indeed, until 1990, the words "inhabitant"

(used prior to 1948) and "resident" (used since 1948), as those words relate to

corporate venue in patent infringement cases, were limited to "the state of incorporation

only."  *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 226 (1957); *see

also VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574,1578 (Fed.

Cir.1990).  In 1990, the Federal Circuit in *VE Holding* interpreted the 1988 amendment

to the general venue statute, 28 U.S.C. § 1391(c), as supplementing the specific

---

[1]Section 1400(b) provides:

> (b) Any civil action for patent infringement may be brought in the
> judicial district where the defendant resides, or where the defendant
> has committed acts of infringement and has a regular and established
> place of business.

provisions of § 1400(b).  More specifically, § 1391 was amended to broaden the

general venue provision for corporations:[2]

> (c) **For purposes of venue under this chapter,** a defendant
> that is a corporation shall be deemed to reside in any
> judicial district in which it is subject to personal jurisdiction at
> the time the action is commenced.

(Emphasis added)  The Federal Circuit held that the emphasized language above

clearly indicated that § 1391(c), on its face, applied to § 1400(b), "and thus redefine[d]

the meaning of the term 'resides' in that section."  917 F.2d at 1578.  Thus, as

recognized by the Federal Circuit, "[v]enue, which connotes locality, serves the purpose

of protecting a defendant from the inconvenience of having to defend an action in a trial

court that is either remote from the defendant's residence or from the place where the

acts underlying the controversy occurred. . . .  The venue statutes achieve this by

limiting a plaintiff's choice of forum to only certain courts from among all those which

might otherwise acquire personal jurisdiction over the defendant."  *Id.* at 1576 (citation

omitted).

Since 1948, 28 U.S.C. § 1404(a) has given district courts the authority to

"transfer any civil action to any other district or division where it might have been

brought." According to the Supreme Court, § 1404(a) "reflects an increased desire to

have federal civil suits tried in the federal system at the place called for in the particular

---

[2]Before the 1988 amendment, § 1391(c) provided:

> (c)  A corporation may be sued in any judicial district in which it is
> incorporated or licensed to do business or is doing business, and
> such judicial district shall be regarded as the residence of such
> corporation for venue purposes.

4

case by considerations of convenience and justice.  Thus . . ., the purpose of the

section is to prevent the waste 'of time, energy and money' and 'to protect litigants,

witnesses and the public against unnecessary inconvenience and expense . . . .'  To

this end, it empowers a district court to transfer 'any civil action' to another district court

if the transfer is warranted by the convenience of parties and witnesses and promotes

the interest of justice."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting

*Continental Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26-27 (1069)).  The Supreme

Court has urged a "common-sense approach" to application of the statute, as it was

designed as a "federal judicial housekeeping measure, dealing with the placement of

litigation in the federal courts and generally intended, on the basis of convenience and

fairness, simply to authorize a change of courtrooms."  *Id.* at 623, 636-37.  *See also*

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981).  Consistent with Federal Circuit

precedent characterizing motions to transfer pursuant to § 1404(a) as procedural

matters, the law of the regional circuit provides the governing standards.  *In re Link_A-*

*Media Devices Corp.*, 662 F.3d 1221, 1222-23 (Fed. Cir. 2011).  *See generally Panduit*

*Corp. v. All States Plastic Mfg. Co., Inc.*, 744 F.2d 1564, 1575 (Fed. Cir. 1984) ("When

we review procedural matters that do not pertain to patent issues, we sit as if we were

the particular regional circuit court where appeals from the district court we are

reviewing would normally lie.  We would adjudicate the rights of the parties in

accordance with the applicable regional circuit law.").

　　　Consistent with the Supreme Court's jurisprudence on § 1404(a), "§ 1404(a)

accords broad discretion to district court[s]" and "directs [such courts] to take account of

5

factors other than those that bear solely on the parties' private ordering of their affairs. [A] district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of the 'interest of justice.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988). Likewise, the United States Court of Appeals for the Third Circuit has directed district courts to consider "many variants of the private and public interests protected by the language of § 1404(a)." *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

As can be seen, by the time *Jumara* issued in 1995, there was a recognized historical continuum that served as the backdrop for the Third Circuit's analysis. First, a defendant's state of incorporation had always been a predictable, legitimate venue for bringing suit. Second, a plaintiff, as the injured party, generally had been "accorded [the] privilege of bringing an action where he chooses." *Norwood v. Kirkpatrick,* 349 U.S. 29, 31 (1955). Indeed, although it was recognized at the time that the enactment of § 1404(a) permitted judges to exercise broader discretion than had been the case under the common law doctrine of *forum non conveniens,*[3] the risk associated with the exercise of such discretion was also recognized, as described in the dissenting opinion in *Norwood* as "assigning to the trial judge the choice of forums, a prerogative which has previously rested with the plaintiff." *Id.* at 37 (Justice Clark, with whom Chief Justice Warren and Justice Douglas concurred, dissenting where the trial judge

---

[3]Which doctrine involved the dismissal of a case if the forum chosen by the plaintiff was "so completely inappropriate and inconvenient that it [was] better to stop the litigation in the place where brought and let it start all over again somewhere else." *Id.*

transferred three personal injury suits from Pennsylvania, where the plaintiffs resided, to

South Carolina, the forum of choice for the defendant employer).

In *Jumara*, the Third Circuit establishes the analytical framework for the

resolution of the instant motion to transfer.  The Court starts its analysis by reminding

the reader that  "[t]he burden of establishing the need for transfer . . . rests with the

movant" and that, "'in ruling on defendants' motion, the plaintiff's choice of venue

should not be lightly disturbed.'"  *Id.* (citation omitted).  *See generally, Van Dusen*, 376

U.S. at 635 (where the Supreme Court refers to "the plaintiff's venue privilege").   The

Third Circuit recognizes that,

> [i]n ruling on § 1404(a) motions, courts have not limited their
> consideration to the three enumerated factors in § 1404(a)
> (convenience of parties, convenience of witnesses, or interests
> of justice), and, indeed, commentators have called on the courts
> to "consider all relevant factors to determine whether on
> balance the litigation would more conveniently proceed and the
> interests of justice be better served by transfer to a different
> forum."

*Id.* (citation omitted).  The Court then describes some of the "many variants of the

private and public interests protected by the language of § 1404(a)."  *Id.*

> The private interests have included:  plaintiff's forum of preference
> as manifested in the original choice . . .; whether the claim arose
> elsewhere . . .; the convenience of the parties as indicated by
> their relative physical and financial condition . . .; the convenience
> of the witnesses - **but only to the extent that the witnesses may
> actually be unavailable for trial in one of the fora** . . .; and the
> location of books and records (**similarly limited to the extent
> that the files could not be produced in the alternative forum**) .
> . . .
>
> The public interests have included:  the enforceability of the
> judgment . . .; practical considerations that could make the trial
> easy, expeditious, or inexpensive . . .; the relative administrative

> difficulty in the two fora resulting from court congestion . . .; the
> local interest in deciding local controversies at home . . .; the
> public policies of the fora . . .; and the familiarity of the trial judge
> with the applicable state law in diversity cases. . . .

*Id.* (citations omitted) (emphasis added).

*Jumara*, of course, was not a patent case and was decided almost two decades ago. It does not take an intellectual leap of faith to suggest that, when the Third Circuit identified the factors discussed above, the Court did not necessarily have in mind the kind of business disputes that are characteristic of today's patent litigation, that is, where the parties are national and international companies competing aggressively for market share with the will, sophistication and resources dedicated to resolving their business disputes in court. Neither did the Third Circuit have in mind the fact that Congress itself has legitimized "forum shopping" by enacting the "Patent Cases Pilot Program," Pub. L. No. 111-349, 124 Stat. 3674, thus eliminating the stigma once associated with that phrase and the notion that plaintiffs, by choosing a forum in the first instance, were engaged in some nefarious conduct.

## IV. ANALYSIS

With the above "jurisdictional guideposts" in mind, the court turns to the "difficult issue of federal comity" that this motion presents. *E.E.O.C. v. Univ. of Pa.*, 850 F.2d at 976. Although transfer is a discretionary decision on the part of a district judge, clearly the Federal Circuit expects an analysis of all the *Jumara* factors in connection with any transfer decision issued by this court. In this regard, the court notes that plaintiffs have not questioned defendants' assertion that the instant law suit could have been brought in the Northern District of California and, therefore, that requirement shall not be

8

addressed further by the court. *See* 28 U.S.C. § 1404(a).

### A. Plaintiffs' Choice of Forum

As noted above, plaintiffs filed suit in Delaware for legitimate reasons.  Delaware

is a venue close to Helicos' principal place of business and, because all of the

defendants are Delaware corporations, it is a venue where all of the defendants could

be sued.  Despite the defendants' implication that plaintiffs at bar, patent enforcement

companies, should be treated as second-class citizens (D.I. 244 at 36-37), the court

declines to disregard the privilege of choosing a venue that has historically been

accorded plaintiffs, absent specific authority making such a distinction.[4]

This factor weighs against transfer.

### B. Where the Claims Arise

A claim for patent infringement arises wherever someone has committed acts of

infringement, to wit, "makes, uses, offers to sell, or sells any patented invention" without

authority.  *See generally* 35 U.S.C. § 271(a); *Red Wing Shoe Co., Inc. v. Hockerson-

Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998) (an infringement claim "arises

out of instances of making, using, or selling the patented invention.").  There is no

dispute but that both Illumina and PacBio have sold allegedly infringing products in

Delaware.  Life has not.

This factor is neutral.

### C. The Convenience of the Parties

The Third Circuit in *Jumara* indicated that, in evaluating the convenience of the

---

[4]Academic institutions (like the University of Arizona) often enforce their patent
rights through private companies (like AzTE).

parties, a district court should focus on the parties' relative physical and financial condition. In this case, clearly all of the defendants are larger in terms of their operations than plaintiff Helicos.[5]  Once again, defendants would downplay this comparison because Helicos is not an operating company.  Nonetheless, so long as Helicos has a legitimate right to enforce its constitutionally protected property rights, the court will make the comparison required under *Jumara.*

This factor weighs against transfer.

### D. The Convenience of the Witnesses

As the Third Circuit in *Jumara* implicitly recognized, litigation is an inconvenient exercise.  Therefore, it is not whether witnesses are inconvenienced by litigation but, rather, whether witnesses "actually may be unavailable for trial in one of the fora" that is a determinative factor in the transfer analysis.  *Jumara*, 55 F.3d at 879.  Setting aside the general argument that party witnesses will be inconvenienced by litigating in Delaware,[6] plaintiffs and defendants spend some time speculating about whether non-party witnesses will be unable to attend trial.  Defendants argue that virtually "every potential non-party witness in this case may be unavailable in Delaware because the Court cannot compel them to appear at trial." (D.I. 169 at 16)  According to plaintiffs, however, the same is true of the Northern District of California.  (D.I. 187 at 15-16)  At this stage of the proceedings, when the parties are simply speculating about who might

---

[5]No comparable information was provided vis a vis plaintiff AzTE.  The court assumes that its statistics would not alter the above analysis.

[6]Depositions in the cases over which this judicial officer presides are generally taken where the deponents reside or work.  According to defendants, this case has been no exception.  (D.I. 169 at 20)

10

be a critical enough fact witness to be called to testify at trial[7] and when neither fora has

subpoena power over the majority of the potential non-party fact witnesses, this factor is

neutral.

### E. Location of Books and Records

The Third Circuit in *Jumara* again advised that, while the location of books and

records is a private interest that should be evaluated, it is not a determinative factor

unless "the files c[an] not be produced in the alternative forum." *Jumara*, 55 F.3d at

879. Defendants argue that, because the "design, development, manufacture, and

marketing of the accused products or technology all took place entirely or primarily in

California (and also, in the case of Illumina, in the UK)," this factor should militate in

favor of transfer to the Northern District of California.

Consistent, however, with the court's view that virtually all businesses (especially

those based on advances in technology) maintain their books and records in electronic

format readily available for review and use at any location, Illumina has observed (in

opposing transfer in past litigation) that "parties (each with principal places of business

in California) have produced millions of pages of documents to each other simply by

sending each other computer disks containing images of the documents." (D.I. 188, ex.

0) There is no indication that discovery in this case has proceeded contrary to the

above, that is, that the exchange of documents has occurred electronically, as it would

whether the parties were within blocks of each other or across the country from each

---

[7]With respect to trials, in the nine patent jury trials conducted by this judicial
officer between March 2010 and October 2011, an average of three fact witnesses per
party appeared live for trial, with the average length of trial being 28 hours (with the
parties often using less time than allocated, on average, 25 hours).

11

other. With respect to trial, the court notes that, in the nine patent jury trials over which this judicial officer presided between March 2010 and October 2011, an average of 87 documents were admitted per trial as exhibits by all parties, hardly a burden.

This factor is neutral.

## F. Practical Considerations That Could Make The Trial Easy, Expeditious, or Inexpensive

This factor arguably is where the "difficult issues of federal comity" most dramatically come into play, as it involves a comparison between courts of equal rank to determine their efficiencies, all in the context of the parties' various business and litigation strategies. The court in Delaware has been criticized for managing its patent docket without the aid of local rules, allowing the judges to vary their case management procedures over time and/or from case to case. The court has also been criticized for embracing its work as a trial court - encouraging parties to settle their disputes, but not shying away from resolving disputes through the adversarial process (including trial) if the parties fail in their efforts to craft a business solution. The court has most specifically been criticized for expecting the corporate citizens of Delaware to make themselves available to litigate in Delaware, as has been their historical obligation, and for making observations about the realities of patent litigation gleaned from the (not insubstantial) experiences of its judges.

Having thus set the stage, the court recognizes that trial in the Northern District of California would be easier and less expensive for the defendants (and arguably for plaintiff AxTE as well), while trial in Delaware would be easier and less expensive for

12

Helicos.  In light of the fact that trial has been scheduled in this case consistent with the parties' proposals, the court will not address which court, the Northern District of California or Delaware, has the most expeditious trial calendar.[8]

This factor weighs in favor of transfer.

### G.  Relative Administrative Difficulty

Given the case management order docketed in this case, the above factor is neutral.

### H.  Local Interest in Deciding Local Controversies

Defendants reiterate their argument that "California has the strongest local interest in this controversy" because the "factual connection of this case to California is overwhelming." (D.I.169 at 18)  In this regard, the court recognizes that defendants maintain their principal places of business in California and that the California economy may be impacted by litigation, e.g., the local economy derives benefits when trials attract visitors and/or are resolved in favor of local companies.

Nevertheless, and despite any implications to the contrary,[9] patent litigation does not constitute a local controversy in most cases.  Patent cases implicate constitutionally protected property rights.  The resolution of patent cases is governed by federal law reviewed by a court of appeals of national (as opposed to regional) stature.  Moreover,

---

[8]Defendants noted in their briefing, however, that "[t]he median time to trial for civil cases in the District of Delaware in 2011 was 26.8 months . . . .  The median time to trial for civil cases in the Northern District of California is comparable - 30.3 months." (D.I. 169 at 18)

[9]See, e.g., Link_A_Media, 662 F.3d at 1224 (in discussing Jumara's public interest factors, the Court emphasized that the forum should have "ties" to the dispute or to the parties aside from being the state of incorporation).

13

to characterize patent litigation as "local" undermines the appearance of neutrality that federal courts were established to provide and flies in the face of the national (if not global) markets that are affected by the outcome of these cases.

This factor is neutral.

### I. Remaining *Jumara* Public Interest Factors

The remaining *Jumara* public interest factors - the enforceability of a judgment, the public policies of the fora, and the familiarity of the judge with state law - were not addressed by the parties and, therefore, are neutral factors in this analysis.

### IV. CONCLUSION

Defendants have the burden of persuading the court, by a preponderance of the evidence, that the *Jumara* factors (as analyzed in light of the record presented by the parties at bar) warrant transfer.  Without giving undue weight to any one factor,[10] defendants have not tipped the scales of justice in favor of transfer.  Their motion is denied.

An appropriate order shall issue.

---

[10]The court declines at this juncture to assign greater weight to the fugacious criterion of convenience than to, e.g., the historic privilege accorded plaintiffs in choosing their forum.

14